VÍCTOR RIVERA RIVERA, demandante y recurrente, *v.* INSULAR WIRE PRODUCTS CORPORATION, demandada y recurrida.

*Número:* CE-94-503          *Resuelto:* 24 de mayo de 1996

916

918

*Héctor Torres Jorge* y *Ángel Marrero Figarella*, abogados del recurrente; *Miguel A. Raldiris*, de *Rivera, Tulla & Ferrer*, abogado de la recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Nos corresponde resolver cuál es la aplicación y el alcance del procedimiento judicial sumario establecido por la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118 y ss., cuando se presenta una querella reclamando derechos, al amparo de diferentes leyes laborales, donde algunas de las causas de acción resultan ser sencillas y otras complicadas.

I

*Hechos*

El 23 de marzo de 1994, en el Tribunal de Primera Instancia, Sala Superior de Bayamón, el obrero Víctor Rivera Rivera presentó una querella contra su ex patrono, Insular Wire Products, Corp. (en adelante Insular). Originalmente, la querella incluía como codemandados al Sr. José A. Fernández, su esposa y a la sociedad legal de bienes gananciales compuesta por ambos. El 12 de abril de 1994 la parte querellante presentó una moción de desistimiento sin perjuicio en cuanto a éstos. Ésta fue acogida por el tribunal el 7 de junio de 1994.

El obrero Rivera Rivera solicitó que la querella se prosiguiese al amparo del procedimiento sumario establecido por la Ley Núm. 2, *supra*. En síntesis, alegó que trabajó para Insular desde el 8 de octubre de 1970 hasta el 3 de febrero de 1994 cuando fue despedido. Continuó alegando que su despido fue sin justa causa, en violación a la Ley Antidiscrimen, Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 y ss., y a la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 y ss.[1] Reclamó daños en concepto de salarios dejados de recibir; "una suma no menor de $300,000 ..., excluyendo el lucro cesante" en concepto de daños y perjuicios, "el doble del importe de los daños sufridos", la reinstalación a su trabajo y noventa mil dólares ($90,000) en concepto de honorarios de abogado. En la alternativa solicitó la compensación por despido injustificado (mesada), al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a y ss.

El día 26 de marzo de 1994, estando aun todos los demandados incluidos en la querella, Insular fue emplazada. Según lo dispuesto por la Ley Núm. 2, *supra*, se le apercibió de que dentro de diez (10) días de la notificación debía contestar la querella y de que si así no lo hacía, se dictaría sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle.

Dentro de dicho plazo, el 5 de abril de 1994, Insular presentó una moción juramentada solicitando un período adicional de treinta (30) días para contestar la querella presentada en su contra. Indicó que necesitaba realizar una investigación de los hechos alegados en dicha querella. El 13 de abril el obrero demandante, Rivera Rivera, se opuso a la prórroga y el 2 de mayo solicitó que se dictara

[1] Alegadamente, el 31 de enero de 1994 el obrero Rivera Rivera había acudido al Fondo del Seguro del Estado por una herida en la mano y no fue hasta el 9 de febrero de 1994, seis (6) días después de su despido, que fue dado de alta.

sentencia en rebeldía en virtud del procedimiento dispuesto en la Ley Núm. 2, *supra*. El tribunal de instancia concedió la prórroga para contestar la querella y el 20 de abril de 1994 —o sea veinticinco (25) días después de la notificación de la querella y quince (15) días después de solicitar la prórroga— Insular contestó.([2])

El tribunal de instancia, el 9 de junio de 1994, durante una vista sobre incidentes pendientes, determinó que éste no era un caso "sencillo de una reclamación meramente de salarios". Expresó que estaban planteadas reclamaciones de despido injustificado en violación a la Ley Antidiscrimen y cuestiones relativas a la Ley del Sistema de Compensaciones por Accidentes del Trabajo. Concluyó que bajo estas circunstancias procedía la prórroga solicitada.

No conforme con esta determinación, el obrero Rivera Rivera presentó un recurso de *certiorari* ante nos. Alegó que el foro de instancia erró al conceder la prórroga, pues no existían fundamentos que la justificaran, todo ello en violación a la Ley Núm. 2, *supra*.

## II

*La Ley Núm. 2 —el procedimiento sumario*

Mediante la Ley Núm. 2, *supra*, la Asamblea Legislativa reformuló las disposiciones de una ley de comienzos de siglo, Ley Núm. 10 de 14 de noviembre de 1917 (32

---

([2]) Básicamente, Insular alegó que despidió al señor Rivera Rivera "por haber desempeñado sus funciones como jefe del Departamento de Tubos de la empresa en forma negligente e ineficiente, al no evitar que desapareciera mercancía y/o materiales por valor de alrededor de $100,000 ... entre el inventario que cubre el período del año 1992 a 1993". También señaló que el despido del señor Rivera Rivera no tuvo que ver con su edad y que las funciones de éste fueron asumidas por el Gerente General de la compañía, Sr. Ricardo García Negrón, de sesenta (60) años de edad. Finalmente, alegó que el despido del señor Rivera Rivera no estaba relacionado con la enfermedad de éste. Explicó que cuando el señor Rivera Rivera fue despedido, éste se había reportado a trabajar y no informó que se encontraba bajo tratamiento con el Fondo del Seguro del Estado (F.S.E.). Añadió que el 28 de febrero de 1994 se enteró por notificación del F.S.E. que no fue hasta el 9 de febrero que el señor Rivera Rivera fue dado de alta.

L.P.R.A. ant. sec. 3101 y ss.), cuyo fin era crear un procedimiento eficaz para que el trabajador agrícola tramitase *reclamaciones salariales* contra su patrono. Aunque la Ley Núm. 2, *supra*, derogó la mencionada ley de 1917, en principio, ambos estatutos eran fundamentalmente iguales. *Dorado Beach Corp. v. Tribunal Superior*, 92 D.P.R. 610, 615 (1965).(³)

■ Aunque la Ley Núm. 2, *supra*, no tiene exposición de motivos, en el proyecto de la legislación P. del S. 194 que la precedió se indicó que al igual que la ley de 1917, la medida era "[p]ara establecer un procedimiento sumario para los casos de *reclamaciones de obreros y empleados contra sus patronos por servicios prestados ...*". (Énfasis suplido.)(⁴) Quedó, pues, inalterado el propósito y naturaleza de dicho procedimiento. Claro está, a tono con la realidad socioeconómica del Puerto Rico de los años sesenta, época en que se perfilaban cambios que tranformarían sustancialmente la economía de nuestra isla, la Ley Núm. 2, *supra*, ofrece protección no sólo al trabajador agrícola, sino también a todo obrero o empleado doméstico, del comercio o la industria, entre otros. 32 L.P.R.A. sec. 3119.

■ En *Landrum Mills Corp. v. Tribunal Superior*, 92 D.P.R. 689, 691–692 (1965), un caso de reclamación de salarios, determinamos la constitucionalidad del procedi-

---

(³) De hecho, en el Senado y en la Cámara de Representantes durante el proceso de estudio del proyecto P. del S. 194 que precedió la aprobación de la ley, permeó la idea de que el propósito de éste era "reenactar [sic] la Ley núm. 10 de 1917 ...". 14 Diario de Sesiones de la Asamblea Legislativa (Ordinaria), T. 4, pág. 1708 (1961).

(⁴) Véanse: Informe de la Comisión del Trabajo del Senado Diario de Sesiones, (Ordinaria), *supra*, págs. 1708, 1735 (1961); Informe de la Comisión del Trabajo a la Cámara de Representantes de 8 de agosto de 1961 (14 Diario de Sesiones de la Asamblea Legislativa (Extraordinaria), pág. 48 (1961), e Informe de la Comisión de lo Jurídico a la Cámara de Representantes de 24 de agosto de 1961, Diario de Sesiones *(Extraordinaria)*, *supra*, pág. 155; además, *La tramitación de reclamaciones de salarios*, mayo-junio La Toga 1 (1969); E.B. Arroyo, *Ley Número 2 (aprobada en 17 de octubre de 1961) Para establecer un procedimiento sumario para los casos de reclamaciones de obreros y empleados por servicios prestados*, 22 Rev. C. Abo. P.R., 195 (1962); R. Delgado Zayas, *Manual informativo de legislación protectora del trabajo de Puerto Rico*, San Juan, 1989, pág. 337.

miento sumario establecido en la Ley Núm. 2, *supra*. Allí expresamos que éste era "un procedimiento especial, de naturaleza sumaria, y por considerar el Estado, que cualquier cuestión relacionada con el contrato de trabajo, por su posible efecto sobre la economía de nuestro pueblo, está revestida de interés público, tiene ciertas disposiciones que son más favorables al obrero que al patrono, por haber sido la conclusión del estudio legislativo que no existe igualdad de medios económicos entre las partes para una adecuada defensa de sus respectivos derechos, al originarse la reclamación judicial".

■ Reconocimos, no obstante, que era esencial brindarle al patrono las oportunidades básicas del debido proceso de ley para defender sus derechos y, luego de analizar el procedimiento establecido en la Ley Núm. 2, *supra*, concluimos que éste cumplía con los elementos básicos del debido proceso de ley.

■ Mediante diferentes disposiciones estatutarias y enmiendas, el alcance de la Ley Núm. 2, *supra*, se ha extendido para que el procedimiento judicial sumario pueda utilizarse con relación a diversas reclamaciones: (1) cualesquiera derechos o beneficios laborales; (2) cualesquiera sumas en concepto de compensación por trabajo o labor realizado; (3) cualesquiera compensaciones en caso de que dicho obrero o empleado hubiese sido despedido de su empleo sin justa causa, o (4) cuando el Legislador lo haya dispuesto expresamente al aprobar otras leyes protectoras de los trabajadores.([5]) R. Delgado Zayas, *Manual informa-*

---

([5]) Por ejemplo, Ley Núm. 379 de 15 de mayo de 1948 (29 L.P.R.A. sec. 282) (Jornada de trabajo); Ley Núm. 73 de 4 de mayo de 1931 (29 L.P.R.A. secs. 187 y 188) (Gravamen por labor de operaciones); Ley Núm. 42 de 30 de mayo de 1972 (29 L.P.R.A. sec. 175); (Deducción salarios cooperativos); Ley Núm. 428 de 15 de mayo de 1950 (29 L.P.R.A. sec. 690) (Seguro social choferil); Ley Núm. 138 de 26 de junio de 1968 (9 L.P.R.A. sec. 2054 y ss.) (Por despido, empleado acogido a beneficios de A.C.A.A.); Ley Núm. 139 de 26 de junio de 1968 (11 L.P.R.A. sec. 201 y ss.) (Por despido, empleado acogido a beneficios de S.I.N.O.T.); Ley Núm. 141 de 29 de junio de 1969 (29 L.P.R.A. sec. 2001 y ss.) (Ingreso garantizado para los trabajadores de la industria azucarera en su fase agrícola); Ley Núm. 142 de 19 de junio de 1969 (29

*tivo de legislación protectora del trabajo de Puerto Rico*,
San Juan, 1989, pág. 339.

■ La Ley Núm. 2, *supra*, también fortaleció el proce-
dimiento sumario como mecanismo judicial rápido para re-
solver reclamaciones laborales al limitar el uso y aplica-
ción de las Reglas de Procedimiento Civil, 32 L.P.R.A. sec.
3120, incluyendo el uso de los mecanismos de descubri-
miento de prueba, entre otras cosas.[6]

■ En fin, la esencia del trámite sumario creado por la
Ley Núm. 2, *supra*, es proveer un mecanismo procesal ju-
dicial que logre la rápida consideración y adjudicación de
las querellas presentadas por los obreros o empleados,
principalmente en casos de reclamaciones salariales y
beneficios. Éstos son casos que por su naturaleza y finali-
dad requieren ser resueltos a la brevedad posible. Son el
mecanismo principal para la implantación de la política
pública del Estado de proteger el empleo, desalentando el
despido sin justa causa y proveyendo al obrero así despe-
dido los medios económicos para la subsistencia de éste y
de su familia, en la etapa de transición entre empleos. *Mer-
cado Cintrón v. Zeta Com., Inc.*, 135 D.P.R. 737 (1994);
*Srio. del Trabajo v. J.C. Penney Co., Inc.*, 119 D.P.R. 660
(1987); *Resto Maldonado v. Galarza Rosario*, 117 D.P.R.
458 (1986); *Díaz v. Hotel Miramar Corp.*, 103 D.P.R. 314
(1975).

■ Para lograr estos propósitos, y tomando en conside-
ración la disparidad económica entre el patrono y el obrero,
y el hecho de que la mayor parte de la información sobre la
reclamación salarial está en poder del patrono, el Legisla-
dor estableció: (1) términos cortos para la contestación de
la querella presentada por el obrero o empleado; (2) crite-

---

L.P.R.A. sec. 2021 y ss.) (Ingreso garantizado-agrícola); Ley Núm. 48 de 29 de mayo
de 1973 (29 L.P.R.A. secs. 153–154) (Despido para sustituir por extranjero ilegal).

[6] Para una discusión sobre los problemas que surgían en los casos de reclama-
ciones laborales al mal utilizarse los mecanismos de descubrimiento de prueba,
véase *Sierra v. Tribunal Superior*, 81 D.P.R. 554 (1959).

rios para la concesión de una sola prórroga para contestar la querella; (3) un mecanismo para el emplazamiento del patrono querellado; (4) el procedimiento para presentar defensas y objeciones; (5) criterios para la aplicación de las Reglas de Procedimiento Civil; (6) una limitación específica sobre el uso de los mecanismos de descubrimiento de prueba; (7) una prohibición específica de demandas o reconvenciones contra el obrero o empleado querellante; (8) la facultad del tribunal para dictar sentencia en rebeldía cuando el patrono querellado no cumpla con los términos provistos para contestar la querella, y (9) los mecanismos para la revisión y ejecución de las sentencias y el embargo preventivo. 32 L.P.R.A. secs. 3120, 3121, 3133.

■ Como podrá observarse, el procedimiento sumario creado por la Ley Núm. 2, *supra*, es uno abarcador que al hacer un balance de los intereses envueltos impone la carga procesal más onerosa al patrono, sin que esto signifique que éste queda privado de defender sus derechos. Esto exige que aclaremos tanto el alcance como la aplicación del procedimiento judicial sumario que establece la Ley Núm. 2, *supra*, cuando concurren en la querella presentada varias causas de acción reclamando derechos al amparo de distintas leyes y disposiciones laborales.([7])

### III

*La Ley núm. 2, la moción de prórroga y las leyes laborales protectoras*

■ Dentro del contexto de reclamaciones de salarios y beneficios propiamente, y con el propósito de apoyar y

---

([7]) Por no estar planteado, no discutiremos el efecto que sobre el alcance y la aplicación del procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118 y ss., tiene el que se hayan incluido otros demandantes además del obrero en la querella o el que se haya incluido una reclamación de daños y perjuicios al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

mantener el delicado balance de intereses establecido por la legislación laboral, en *Román Cruz v. Díaz Rifas*, 113 D.P.R. 500, 505 (1982), expresamos que en ocasiones hemos sido enérgicos en la interpretación y aplicación de la Ley Núm. 2, *supra*, y que en otras hemos sido más flexibles, dependiendo de los hechos particulares del caso y según lo exijan las circunstancias. Recientemente, en *Mercado Cintrón v. Zeta Communications, Inc.*, supra, pág. , otro caso de reclamación de salarios, reafirmamos que es el deber de los tribunales darle estricto cumplimiento al procedimiento sumario de la Ley Núm. 2, *supra*, aclarando que las circunstancias especiales que requieran alguna flexibilidad en dicha ley, según reconocidas en *Román Cruz v. Díaz Rifas*, supra, no pueden ser utilizadas para soslayar o subvertir el precepto de rapidez en el trámite judicial estatuido por la Ley Núm. 2, *supra*.

Pero, a pesar de sus propósitos y del carácter sumario del procedimiento establecido por la Ley Núm. 2, *supra*, el Legislador no quiso imponer un trámite procesal inflexible e injusto para el patrono querellado. Para evitar posibles inequidades y permitir que se pudiesen tomar en consideración circunstancias meritorias, fue que el Legislador dispuso que el patrono querellado podía solicitar una prórroga para contestar la querella en casos excepcionales.

Esta sola prórroga tiene que solicitarse, como regla general, antes de que venza el término para contestarla y dicha solicitud tiene que ser presentada mediante moción en la cual se expongan, bajo juramento, los motivos que la apoyan. 32 L.P.R.A. sec. 3120. Sobre este particular en *Díaz v. Hotel Miramar Corp.*, supra, pág. 320, expresamos "que salvo circunstancias especialísimas fuera del control de los abogados y de las partes —que vislumbramos como excepcionales y poco frecuentes— una solicitud de prórroga tiene que ser presentada en la secretaría del tribunal correspondiente dentro del término inicial que tiene la parte para formular su contestación a la querella".

■ Cuando la querella se fundamenta en datos que el patrono está obligado por ley a recopilar y a conservar, resulta obvio que no existe razón alguna para dilatar los procedimientos concediéndole prórrogas innecesarias para que conteste. *Dorado Beach Corp. v. Tribunal Superior*, supra, pág. 618. Sin embargo, en aquellos casos en que un tribunal determina que se trata de reclamaciones complicadas o que existen circunstancias especiales que ameriten que el patrono querellado realice una más detenida y minuciosa investigación para contestar y presentar defensas adecuadas, se justifica la concesión de una prórroga.

■ La legislación laboral permite que, además de las reclamaciones de salarios y beneficios de la Ley Núm. 80, *supra*, se puedan tramitar por el procedimiento sumario de la Ley Núm. 2, *supra*, otros tipos de reclamaciones que pueden emanar de la relación obrero-patronal y que están reglamentadas por leyes protectoras especiales. Una de estas acciones es la que surge al amparo del Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, 11 L.P.R.A. sec. 7.[8] Este artículo permite que la reclamación de reinstalación al empleo y/o daños allí autorizada se pueda tramitar por acción ordinaria o mediante el procedimiento sumario de la Ley Núm. 2, *supra*. Otra reclamación que permite tanto el uso de la vía ordinaria como el procedimiento sumario es la que surge bajo el Art. 1 de la Ley Antidiscrimen, *supra*, 29 L.P.R.A. sec. 146. El Art. 4 de dicha ley, 29 L.P.R.A. sec. 149, expresa-

---

[8] En lo pertinente, el Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 7) dispone:

"Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. *El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32*". (Énfasis suplido.)

mente autoriza esta alternativa procesal para la reclamación de daños y restitución al empleo.([9])

Ciertamente, se pueden tramitar bajo el procedimiento sumario de la Ley Núm. 2, *supra,* acciones que surgen al amparo de la Ley Núm. 80, *supra,* de la Ley Núm. 100, *supra,* y de la Ley Núm. 45, *supra.* Pero, con excepción de las reclamaciones bajo la Ley Núm. 80, *supra,* para las cuales sólo está disponible el procedimiento sumario de la Ley Núm. 2, *supra,* el que un obrero o empleado lo considere conveniente y que exista la opción de utilizar el procedimiento sumario para tramitar sus reclamaciones, no impide que el tribunal, utilizando su discreción y haciendo un justo balance entre los intereses del patrono y los del obrero querellante —a la luz de las circunstancias específicas de las reclamaciones en la querella— determine que es más prudente que las reclamaciones bajo la Ley Núm. 100, *supra,* y la Ley Núm. 45, *supra,* se ventilen por la vía ordinaria.([10])

---

([9]) Dispone dicho artículo, en lo pertinente:

"El Tribunal Superior y el Tribunal de Distrito tendrán jurisdicción original concurrente en los casos que surgieren bajo las secs. 146 a 151 de este título. *Las reclamaciones civiles podrán tramitarse por acción ordinaria o mediante el procedimiento de querella establecido por la Ley Núm. 10 de 14 de noviembre de 1917, según ha sido o fuere posteriormente enmendada.*" (Énfasis suplido.) 29 L.P.R.A. sec. 149.

([10]) De hecho, también en Estados Unidos a las compensaciones por salarios debidos se les ofrece un tratamiento procesal diferente de las demás compensaciones disponibles en estatutos laborales que ofrecen protección al obrero o empleado. Véanse, por ejemplo: Título VII de la Ley de Derechos Civiles; Equal Pay Cut Coverage, 42 U.S.C. sec. 703 y ss.; 29 U.S.C. sec. 206(d) (1978); Age Discrimination Act, 29 U.S.C. sec. 630; Reconstruction Civil Right Acts, 42 U.S.C. sec. 1981 (1981), 42 U.S.C. sec. 1983 (1981), 42 U.S.C. 1985(3) (1981). Para una discusión al respecto, véase C.A. Sullivan, M.J. Zimmer y R.F. Richards, *Employment Discrimination,* 2da ed., Boston, Ed. Little, Brown and Co., 1988, Vol. II, págs. 53–55, 219–224, 407–409, 521–527.

## IV

*Normas generales procesales y el procedimiento sumario —
Ley Núm. 2, supra.*

█ Como ya expresáramos, el procedimiento judicial sumario establecido por la Ley Núm. 2, *supra*, tiene como fin primordial el proveerle al obrero un mecanismo procesal acortado que facilite y aligere el trámite de sus reclamaciones laborales. Aunque este procedimiento, limita el uso de las reglas procesales y sitúa al patrono en una posición procesalmente un poco más onerosa que la del obrero, el procedimiento sumario no es, ni puede ser, una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones o prueba, hechos que avalen su derecho a lo reclamado. *Díaz v. Hotel Miramar Corp.*, supra, pág. 324.

█ En el trámite de los casos en los tribunales, ya sea que éstos se ventilen por la vía ordinaria o por algún procedimiento especial como el sumario establecido por la Ley Núm. 2, *supra*, hay que tener presente que el propósito cardinal de las normas procesales, bajo cualesquiera circunstancias, es lograr resolver las controversias que se presentan ante el sistema judicial de forma justa, rápida y económica. Los tribunales de instancia tienen amplia flexibilidad y discreción para, dentro del marco que proveen las Reglas de Procedimiento Civil y los procedimientos especiales, lograr esta meta al resolver los casos ante su consideración.

█ A las partes también se les provee gran flexibilidad para que planteen sus reclamaciones ante el foro judicial. Sólo se les requiere que bosquejen "a grandes rasgos, cuáles son las reclamaciones, de forma tal que la parte demandada quede notificada de la naturaleza general de las contenciones en su contra y pueda comparecer a defenderse si así lo desea". *Ortiz Díaz v. R. & R. Motors Sales*

*Corp.*, 131 D.P.R. 829, 835 (1992); *Mercado Cintrón v. Zeta Com., Inc.*, supra; *Reyes v. Cantera Ramos, Inc.*, 139 D.P.R. 925 (1996).

En cuanto a la relación de las alegaciones en una demanda o querella, éstas serán sucintas y sencillas y se interpretarán de forma conjunta, liberalmente a favor del demandante o querellante. Reglas 1 y 6 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Reyes Castillo v. Cantera Ramos, Inc.*, supra; *Moa v. E.L.A.*, 100 D.P.R. 573 (1972); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1984, Vol. II, Cap. III, pág. 47. Sólo en contadas ocasiones es que las reglas procesales exigen que se hagan alegaciones específicas. Por ejemplo, las Reglas de Procedimiento Civil exigen que se aleguen específicamente los daños especiales, si así no se hace no podrá admitirse prueba sobre éstos si la otra parte objeta. Regla 7.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Las partes pueden incluir en una querella o reclamación una o más causas de acción que surjan de la misma o de distintas leyes o hechos.[11] La acción puede instarse por uno o varios demandantes e incluir a uno o varios demandados. Ahora bien, los tribunales, al confrontarse con querellas o demandas con causas de acción y partes múltiples, tienen amplia discreción sobre el manejo del caso con el propósito de lograr la resolución de éste de la forma más justa, rápida y económica posible. Pueden separar causas de acción o controversias, consolidar trámites, determinar a la luz de las circunstancias de cada caso si se trata de controversias sencillas que cualifican para verse por un trámite sumario especial o si se trata de casos, complicados o complejos, que deben proceder por la vía ordina-

---

[11] La Sec. 3 de la Ley Núm. 2, *supra*, 32 L.P.R.A. sec. 3120, específicamente prohíbe que se presente contrademanda o reconvención contra el obrero o empleado querellante.

ria y hasta ser objeto de un manejo especial. Regla 38.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Vellón v. Squibb Mfg., Inc.*, 117 D.P.R. 838 (1986); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 D.P.R. 170 (1992).

Toda decisión que se tome e interpretación que se haga sobre algún procedimiento especial tiene que partir de la base de que la función de los tribunales es impartir justicia dentro de un proceso adversativo, resolviendo en los méritos las controversias y reclamaciones que las partes le presentan. No es, ni puede ser, el conceder lo que se solicita por el simple hecho de que se le solicitó o como sanción porque la otra parte no cumplió con algún procedimiento o no compareció.

■ Los tribunales, si determinan que las actuaciones de una parte están perjudicando y entorpeciendo los procedimientos, tienen amplia facultad para prohibir, sancionar o castigar este tipo de conducta y actitud. Entre otras cosas, pueden eliminar alegaciones y defensas, desestimar reclamaciones, imponer sanciones económicas a las partes, a sus abogados o a ambos, dar por admitidos ciertos hechos y dictar sentencia en rebeldía. Véanse, entre otros: Reglas 6.4, 9, 10.8, 34.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986); *Lluch v. España Service Sta.*, 117 D.P.R. 729 (1986). Ahora bien, a pesar de la gran discreción que tienen los tribunales en esta área y del hecho de que estas medidas pueden tener el efecto de facilitar la prueba de su caso a la parte que ha sido diligente en el trámite de su reclamación o defensa, esta facultad de sancionar no puede interpretarse como que se extiende a poder conceder un remedio al cual no se ha demostrado, por la prueba o por las alegaciones, que se tiene derecho.

■ En cuanto a la sentencia en rebeldía que se dicta al amparo del procedimiento sumario de la Ley Núm. 2, *supra*, hemos reconocido que las disposiciones y normas interpretativas de la Regla 45 de Procedimiento Civil, 32

L.P.R.A. Ap. III, serán aplicables en todo aquello en que no estén en conflicto con disposiciones específicas de la Ley Núm. 2, *supra*, o con el carácter sumario del procedimiento que allí se establece. Sec. 3 de la Ley Núm. 2, *supra*, 32 L.P.R.A. sec. 3120; *Díaz v. Hotel Miramar Corp.*, supra, pág. 321.

En el caso normativo sobre sentencias dictadas en rebeldía, *Continental Ins. Co. v. Isleta Marina*, 106 D.P.R. 809, 815 (1978), resolvimos que a tenor "con la doctrina prevaleciente, como regla general, el trámite de un caso en rebeldía ... tiene como consecuencia jurídica que se estimen aceptadas todas y cada una de las materias bien alegadas en la demanda ...". Aclaramos que "materias bien alegadas" era equivalente a "hechos correctamente alegados" y advertimos que esto "no priva al tribunal de evaluar si en virtud de tales hechos, no controvertidos, existe válidamente una causa de acción que amerita la concesión del remedio reclamado". Íd., págs. 815–816. En dicho caso fuimos enfáticos al declarar *"que los tribunales no son meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía"*. (Énfasis suplido.) Íd. pág. 817. Y que un "trámite en rebeldía no garantiza, *per se*, una sentencia favorable al demandante; el demandado no admite hechos incorrectamente alegados como tampoco conclusiones de derecho", ni alegaciones conclusorias. Íd., pág. 817. A la luz de estos principios, reconocimos que en el descargo de la función judicial, el tribunal deberá celebrar las vistas que crea necesarias y adecuadas para comprobar cualquier alegación.

La Sec. 4 de la Ley Núm. 2, *supra*, 32 L.P.R.A. sec. 3121, es la que contiene disposiciones específicas sobre la sentencia dictada en rebeldía. Ésta limita la discreción que al amparo de la Regla 45 de Procedimiento Civil, *supra*, tiene un juez para decidir si el caso debe o no tramitarse en rebeldía. Al amparo de la Ley Núm. 2, *supra*, si el querellado no presenta contestación en la forma y manera

que se dispone en la Sec. 3 de la ley, 32 L.P.R.A. sec. 3120, el tribunal *tiene* que ver el caso en rebeldía. La sentencia así dictada será final, no podrá apelarse. Sin embargo, el querellado podrá solicitar la revisión de los procedimientos. Para esto tendrá diez (10) días desde la notificación de la sentencia.([12])

▪ Como podrá observarse, estas disposiciones no están en conflicto con las normas esbozadas en *Continental Ins. Co. v. Isleta Marina,* supra, de que al dictar sentencia en rebeldía se entienden aceptados los hechos bien alegados en la querella; que la rebeldía no priva al tribunal de su facultad de evaluar los méritos de la causa de acción; que el querellado no admite hechos incorrectamente alegados ni conclusiones de derecho, y que la tramitación de un caso en rebeldía *no* garantiza una sentencia favorable al querellante. Tampoco estas normas procesales están reñidas con la naturaleza y el carácter rápido y sumario del procedimiento establecido en la Ley Núm. 2, *supra,* concluimos, pues, que éstas son aplicables a estos procedimientos.

▪ A la luz de lo antes expuesto, resolvemos, con relación a sentencias dictadas en rebeldía, al amparo de la Ley Núm. 2, *supra,* que alegaciones conclusorias y determinaciones de derecho, al igual que los hechos incorrectamente alegados, no son suficientes para sostener una determinación de responsabilidad. Huelga decir que los daños generales reclamados, al no constituir éstos una suma líquida, tienen que probarse. No basta con simplemente alegar que éstos montan a la cantidad reclamada.

---

([12]) Aunque la Sec. 4 de la Ley Núm. 2, *supra,* 32 L.P.R.A. sec. 3121, dispone que la revisión se hará mediante recurso de revisión presentado ante el Tribunal Supremo, luego de las enmiendas de 25 de diciembre de 1995 a la Ley de la Judicatura de Puerto Rico de 1994 y a las Reglas de Procedimiento Civil, será necesario interpretar y armonizar esta sección de la Ley Núm. 2, *supra,* con los incisos (a) e (i) del Art. 4.002 de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, 4 L.P.R.A. sec. 22k, y la Regla 53.1(c) de Procedimiento Civil, según enmendada, 32 L.P.R.A. Ap. III.

"[B]ajo cualesquiera circunstancias, la cuantía de daños debe ser objeto de prueba". *Continental Ins. Co. v. Isleta Marina*, supra, pág. 818.

Pasemos ahora a aplicar las normas antes esbozadas a los hechos particulares del caso ante nuestra consideración.

## V

*Análisis de las alegaciones de la querella*

En la querella y en lo que respecta a la reclamación al amparo de la Ley Núm. 80, *supra*, el obrero querellante hace las alegaciones siguientes:

> 4. El querellante V[í]ctor Rivera Rivera prestó servicios para la parte querellada desde el 8 de octubre de 1970 mediante contrato sin tiempo determinado y devengando un salario de $7.25 por hora más incentivos de productividad.
> 5. El querellante fue despedido de su empleo mediante una carta que se le entregó, fechada el 3 de febrero de 1994.
>
> .   .   .   .   .   .   .   .   .
>
> 12. Que se alega y reclama, en la alternativa, la compensación de despido injustificado (mesada) la cual asciende a $13,500.00 tomando en cuenta que el querellante trabajó 24 años para la querellada. Todo ello conforme lo dispone la Ley 80 de 30 de mayo de 1976.

No cabe duda de que estas alegaciones contienen hechos suficientes para que, unidos al récord e información en poder del patrono querellado, éste pueda formular una contestación adecuada aduciendo las defensas que estime pertinentes, dentro del término relativamente corto provisto en el procedimiento sumario de la Ley Núm. 2, *supra*. También surge con meridiana claridad que los *hechos bien alegados* en la querella son suficientes para que, considerándolos aceptados por el querellado, con un simple cómputo matemático, el tribunal pueda dictar en rebeldía una sentencia, concediendo así el remedio provisto por la Ley Núm. 80, *supra*. Después de todo, se está ante una canti-

dad líquida fácilmente computable y una determinación de responsabilidad relativamente sencilla de adjudicar. No ocurre lo mismo con relación a las reclamaciones basadas en las Leyes Núms. 100 y 45, *supra*. Veamos.

Las alegaciones específicas en cuanto a la reclamación bajo estas leyes son las siguientes:

6. El despido del querellante se debió a que el patrono [Insular] discriminó contra él por edad, lo despidió sin justa causa y en violación a lo dispuesto en la Ley de [Compensaciones por] Accidentes de Trabajo.

7. Que la acción de la parte querellada constituye una violación a las disposiciones de la Ley 100 de 30 de junio de 1959, según enmendada, y la Ley de [Compensaciones por] Accidentes de Trabajo.

8. Que la acción de la parte querellada al despedir al querellante por la razón antes expuesta le ha causado daños consistentes en salarios dejados de percibir desde el momento de despido, los cuales al momento de la radicación de esta querella ascienden a una suma no menor de $4,000.00. Dicha cantidad continuará aumentando hasta tanto el querellante sea reinstalado en su empleo a razón de $290.00 semanales, que era su sueldo y cerca de $200.00 semanales por concepto de incentivos.

. . . . . . . . .

11. Que al momento del despido, el querellante se encontraba reportado al Fondo del Seguro del Estado recibiendo tratamiento médico, por lo que su despido también constituye una violación a las leyes según establecidas por el Título 11 de L.P.R.A. El Artículo 5A de la Ley de [C]ompensaciónes por [A]ccidentes del [T]rabajo establece que el obrero o empleado podrá requerir de su patrono la reinstalación a su trabajo.([13])

Como podrá observarse, en lo que respecta a la Ley

---

([13]) Las alegaciones 9 y 10 se refieren de forma conclusoria a las cuantías de los supuestos daños sufridos y constituyen alegaciones mixtas de hechos y derechos insuficientes para avalar, por sí solas, el remedio reclamado:

"9. Además de los salarios dejados de percibir, el querellante ha sufrido daños y perjuicios y angustias mentales como consecuencia del discrimen sufrido; no ha podido conseguir trabajo a pesar de sus gestiones; ha desarrollado ansiedad, insomnio y profundos dolores y angustias, cuyos daños se estiman en una suma no menor de $300,000.00, excluyendo el lucro cesante.

"10. Conforme lo dispuesto en las leyes del trabajo, la parte querellante tiene derecho y reclama el doble del importe de los daños sufridos a consecuencia de la acción ilegal de los querellados."

Núm. 100, *supra*, en la querella no hay *hechos bien alega-dos* de los cuales se pueda concluir que efectivamente el despido se debió a un discrimen por parte del patrono con-tra el obrero por razón de edad. El querellante simple-mente esboza esa conclusión de derecho sin proveer hechos que la sustenten. Bajo estas circunstancias, aunque la que-rella cumple, en términos generales, con el propósito de notificar a grandes rasgos la controversia y la reclamación contra Insular, el corto término provisto por el procedi-miento sumario podría resultar inadecuado para que el pa-trono pueda hacer la investigación minuciosa requerida para obtener la información necesaria que le permita res-ponsablemente contestar la querella y presentar sus defensas. Hay que recordar que el procedimiento sumario sólo permite una contestación y que, como regla general, no proceden las enmiendas.

Además, el tribunal, aún presumiendo ciertos los *hechos bien alegados* en la querella, no podría dictar sentencia en rebeldía concediendo remedio alguno al amparo de la Ley Núm. 100, *supra*. No hay hechos suficientes que justifi-quen tal determinación. Como mínimo, antes de dictar sen-tencia en rebeldía tendría que celebrar vista evidenciaria sobre las alegaciones, tanto de responsabilidad como de daños.

Lo mismo ocurre con relación a la reclamación bajo la Ley Núm. 45, *supra*. El querellante alega escuetamente que se encontraba reportado al Fondo del Seguro del Es-tado al momento de su despido. Para poder formular una contestación adecuada y aducir las defensas que correspon-dan, el patrono tendrá que hacer una investigación para obtener información que no necesariamente se tiene que encontrar en su poder. Por ejemplo, información tan indis-pensable para poderse defender como lo sería determinar si el obrero aún no había sido dado de alta por el Fondo, puede que no esté en conocimiento o posesión del patrono. Bajo estas circunstancias, la concesión de una prórroga

para contestar la querella resultaría razonable y apropiada.

Tomando en consideración todo lo antes expuesto e interpretando las alegaciones de la querella de forma integral, las unas con las otras en conjunto con la súplica, y de la forma más liberal para la parte querellante, concluimos que el foro de instancia actuó correctamente al determinar que no estaba ante un caso sencillo y que se justificaba la concesión de la prórroga solicitada para contestar. El mismo querellante así parece reconocerlo implícitamente al solicitar la concesión de honorarios de abogados en "una suma no menor de $90,000 ...."

Procede, pues, confirmar la resolución recurrida y devolver el caso al foro de instancia para que continúen los procedimientos de forma consistente con lo aquí resuelto. El tribunal de instancia podrá, a la luz de los hechos que se le presenten y el desarrollo procesal del caso, dentro de su discreción, entre otras cosas, continuar ventilando la querella en su totalidad mediante el procedimiento sumario de la Ley Núm. 2, *supra*; o, separar la causa de acción bajo la Ley Núm. 80, *supra*, y ventilarla prioritariamente mediante el procedimiento sumario, posponiendo la consideración de las otras dos (2) causas de acción bajo la Ley Núm. 100, *supra*, y la Ley Núm. 45, *supra*, y la determinación de si éstas se deben tramitar por la vía ordinaria o por el procedimiento sumario; o, establecer cualquier otro manejo del caso que sea consistente con lo aquí resuelto y propicie el cumplimiento de los propósitos de la legislación laboral y la norma cardinal procesal judicial de dispensar justicia de forma rápida y económica.

Por los fundamentos antes expuestos, *se dictará sentencia confirmando la resolución recurrida y devolviendo el caso al foro de instancia para que continúen los procedimientos de forma consistente con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López emitió una opinión concurrente. El Juez Asociado Señor Fuster Berlin-

geri emitió una opinión disidente. El Juez Asociado Señor Negrón García disintió sin opinión escrita.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Desde hace algunos años hemos venido criticando severamente la práctica de publicar, como "Opinión del Tribunal", ponencias que deben ser certificadas como "Sentencias".

En vista del hecho de que la "Opinión", a diferencia de la "Sentencia", establece jurisprudencia que resulta obligatoria tanto para el tribunal intermedio apelativo como para el tribunal de primera instancia, esta práctica conlleva el "peligro", *entre otros*, de innecesariamente establecer "normas" que tienen la indeseable consecuencia de confundir a dichos foros judiciales y a la profesión legal en general.

Aun más grave, y perjudicial, a nuestro ordenamiento jurídico, resulta ser la situación en que, *como en el presente caso*, se establecen normas que resultan ser imprácticas o imposibles de implementar.

I

En relación con una querella que un obrero radicara contra su patrono, al amparo de las disposiciones de la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. sec. 3118 *et seq.*) ante el antiguo Tribunal Superior de Puerto Rico, Sala de Bayamón, *el patrono querellado radicó —bajo juramento, según requerido por la citada Ley Núm. 2— una moción de prórroga*, indicando en la misma, en síntesis, que antes de contestar la querella necesitaba realizar una investigación de los hechos alegados en la misma. *El*

*obrero se opuso.* El tribunal de instancia *concedió* la prórroga solicitada.([1])

En revisión de *esa* determinación el obrero querellante acudió —vía *certiorari*— ante este Tribunal, imputándole al foro de instancia haber errado:

> ... *AL PERMITIR Y/O CONCEDER UNA PR[Ó]RROGA SIN FUNDAMENTO Y/O MOTIVO ALGUNO QUE JUSTIFIQUE DICHA CONCESIÓN,* VIOL[Á]NDOSE AS[Í] LO ESTABLECIDO EN LA LEY NÚM. [2] DEL 17 DE OCTUBRE DE 1961, SEGÚN ENMENDADA, 32 L.P.R.A., SEC. 3118 Y SS. (Énfasis suplido.)

Esta petición de *certiorari* fue atendida por una Sala Especial de Verano, "integrada por su Presidente, el Juez Asociado Señor Rebollo López, la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Fuster Berlingeri" (Resolución de 29 de julio de 1994), la cual Sala Especial, con el voto en contra del Juez suscribiente, decidió "expedir" el mismo.([2])

## II

La "cuestión planteada", vale la pena repetir, en el presente recurso lo es, *llana y sencillamente,* si erró, o no, el tribunal de instancia, al conceder la moción de prórroga que solicitara el patrono querellado; *cuestión que, en nuestro humilde criterio, pudimos —y debimos— haber resuelto con un sencillo "no ha lugar" allá para el 29 de julio de 1994.*

Ello, *naturalmente,* hubiera tenido el efecto, *deseable y saludable para la administración de la justicia en general,*

---

([1]) Procede que se señale que la querella radicada contenía varias causas de acción al amparo de diferentes leyes, a saber: Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*); Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 146 *et seq.*); Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 *et seq.*).

([2]) Véase Resolución de 29 de julio de 1994. Resulta, *cuando menos,* curioso que los dos (2) Jueces que entonces votaron en favor de expedir el recurso, *hoy votan en forma contraria.*

de que el caso ya se hubiera podido haber resuelto en sus méritos, con el beneficio particular inmenso que ello conlleva para ambas partes, *en lugar de haber sucedido la presente situación*; esto es, el transcurso de aproximadamente dos (2) años sin que el caso todavía haya trascendido de la etapa de solicitud de prórroga y contestación de la querella.

### III

Respetamos —*naturalmente*— el criterio mayoritario de los integrantes del Tribunal. Se *decidió expedir* el recurso en lugar de denegarse el mismo. ¿Cuál, *cabe preguntarse*, debe ser el vehículo procesal decisorio para resolver la "cuestión planteada" en el recurso? A esos efectos, debe recordarse que la "cuestión planteada" lo es la procedencia, o no, de una moción de prórroga; cuestión que, *ciertamente*, no "luce" ser muy importante. Nos inclinamos a pensar que dicha "cuestión" realmente *no* amerita la preparación, y certificación, de una "Opinión del Tribunal". Esto es, somos del humilde criterio que, *a lo sumo*, el caso, o la "cuestión planteada", lo que amerita es la certificación de una sencilla y simple "Sentencia".

### IV

La mayoría del Tribunal no sólo erra al emitir una "Opinión" en el presente caso; emite una ponencia donde se establece una norma vaga y amplia, situación que tendrá el indeseable efecto de confundir a la profesión legal en general.

Se nos informa, en la "Opinión" emitida, que se "justifica" la concesión de una prórroga "en aquellos casos en que un tribunal determina que se trata de *reclamaciones complicadas* o que existen *circunstancias especiales* que ameriten que el patrono querellado realice una más detenida y

minuciosa investigación para contestar y presentar defensas adecuadas ...". (Énfasis suplido.) Opinión mayoritaria, pág. 926. Con mucho respeto, somos del criterio que nadie podrá saber, *con certeza*, cuando se está siguiendo, o resolviendo conforme a, la "norma" hoy establecida por el Tribunal; ello en vista del hecho de que realmente resulta difícil *precisar* cuando se trata de "reclamaciones complicadas" y cuando existen "circunstancias especiales".

Pero, *hay más*. La mayoría del Tribunal, *en un claro y patente* "dictum", entra a resolver una cuestión *no* planteada en el recurso ante nuestra consideración. Nos informa el Tribunal —*respecto a la decisión de cuándo debe seguir el tribunal de instancia el "procedimiento sumario", establecido por la citada Ley Núm. 2, y cuándo, por el contrario, debe ordenar que el caso se ventile por la "vía ordinaria"*— que los tribunales de instancia deberán hacer "un *justo balance* entre los *intereses* del patrono y los del obrero querellante —a la luz de las *circunstancias específicas* de las reclamaciones en la querella ...". (Énfasis suplido.) Opinión mayoritaria, pág. 927. Procede que nos preguntemos si dicha "norma" es una que, *realmente*, va a mejorar la administración de la justicia en este campo del derecho. ¿Alguien podrá definir, *con certeza*, a qué se refiere el Tribunal?

Nos atrevemos a *pronosticar* que estas *dos* (2) "normas" desembocarán en un total estado de confusión a nivel de instancia; ello en vista del hecho de que necesariamente habrá *diversidad* de opiniones, *tantas como jueces de instancia y paneles apelativos existen*, sobre cuándo —con el propósito de determinar si procede, o no, una prórroga— se trata de "reclamaciones complicadas" o cuando existen "circunstancias especiales", y cuándo ese "justo balance", del que nos habla la Mayoría, requerirá que el caso se dilucide por la vía ordinaria en lugar del procedimiento sumario que establece la citada Ley Núm. 2 de 1961; *estatuto que, en virtud de lo expresado, vía dictum, por la Mayoría en el*

*presente caso, ha perdido totalmente su eficacia y razón de
ser.*

## V

Pero, *todavía hay más.* Sin que haya sido planteado, sin
que ello sea necesario para la correcta solución del recurso,
y recordando que todavía el caso está a nivel de instancia
en su etapa preliminar, la mayoría de los integrantes del
Tribunal entra a discutir *cuándo procede, o no, la concesión
de una sentencia en rebeldía en un caso.* Parece ser que la
Mayoría se "olvida" del hecho de que, *si resulta procedente
la concesión de la prórroga solicitada y, conforme surge del
expediente, la parte querellada ya, inclusive, radicó ante el
foro de instancia la contestación a la querella,* no hay ne-
cesidad alguna para la disertación sobre cuándo resulta
procedente una sentencia en rebeldía.

## VI

No obstante lo antes expresado, *concurrimos* con el re-
sultado al que llega la Mayoría en el presente caso; esto es,
consistente con la posición que expresáramos hace aproxi-
madamente dos (2) años, estamos de acuerdo en que pro-
cede la *confirmación* de la determinación del tribunal de
instancia concediendo la prórroga solicitada por el patrono
querellado.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Fus-
ter Berlingeri.

En *Mercado Cintrón v. Zeta Com., Inc.,* 135 D.P.R. 737
(1994), este Tribunal hizo referencia a un problema que
existe en algunos foros de instancia, en los cuales no se

acatan con fidelidad los requerimientos de la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. sec. 3118 *et seq.*). Señalamos entonces que creíamos menester "reafirmar palmariamente el deber que de ordinario tienen todos los tribunales del país de darle estricto cumplimiento al procedimiento sumario de dicha ley". *Mercado Cintrón v. Zeta Com., Inc.*, supra, pág. 743.

Hoy, una mayoría de este Tribunal actúa de modo inconsistente con lo pronunciado en *Mercado Cintrón v. Zeta Communications, Inc., supra*, al resolver que en situaciones como la de autos, los tribunales de instancia tienen "amplia flexibilidad y discreción" no sólo para conceder prórrogas, sino incluso para desautorizar el uso del procedimiento sumario de la Ley Núm. 2, *supra*. Invocando como autoridad el "propósito cardinal" de las Reglas de Procedimiento Civil, la mayoría, en efecto, dictamina que puede descartarse el claro y preeminente mandato legislativo de que las reclamaciones judiciales de trabajadores despedidos se diluciden expeditamente.

No puedo estar de acuerdo con este proceder de la mayoría. No sólo es inconsistente con nuestra anterior decisión en *Mercado Cintrón v. Zeta Communications, Inc.*, supra, sino que constituye un desafortunado ejercicio de una facultad que no nos corresponde. No tenemos la prerrogativa de invalidar mandatos concretos y específicos del poder legislativo sólo porque éstos supuestamente son disconformes con unas "normas generales procesales", mucho menos cuando el mandato legislativo constituye una política pública social del más alto rango. Si existen problemas reales con la implantación de la Ley Núm. 2, *supra*, en algunos tipos de casos, le corresponde al poder legislativo, no a este Tribunal, hacer las enmiendas correspondientes a dicho estatuto.

Más aún, el inusitado proceder de la mayoría en este caso se torna aun más injustificado cuando se consideran los hechos particulares del pleito ante nos. En el caso de

autos, el querellado solicitó una prórroga de treinta (30) días para contestar la querella en su contra, alegando meramente que necesitaba investigar los hechos aducidos en ésta. Quince (15) días después, a mitad del término de la prórroga que el tribunal de instancia le concedió, el patrono contestó la querella y alegó, en esencia, que el trabajador había sido despedido por ser negligente en el desempeño de sus funciones y no por razones de edad o enfermedad. *Tal contestación revela indudablemente que la prórroga no era necesaria.* Contrario a lo que afirma la mayoría, y a lo que decidió el foro a quo, no tenemos ante nos una situación *excepcional* que justifica una prórroga. No se trata aquí de una contestación que requería investigar circunstancias complicadas o hechos complejos. Se trata más bien de una contestación común, casi estereotipada, que muy bien pudo haberse formulado dentro del término que fija la Ley Núm. 2, *supra.* Vista, a la luz más favorable al querellado, la contestación referida sólo alude a las razones que tuvo el patrono para despedir al querellante, que necesariamente eran conocidas al momento del despido, por lo que no se requería prórroga de clase alguna para señalar tales razones como contestación a la querella.

En vista de lo anterior, es a todas luces claro que la solicitud de prórroga por el querellado aquí constituía precisamente el tipo de conducta dilatoria que la Ley Núm. 2, *supra,* prohíbe. Se trata de la malsana práctica usual en casos de esta naturaleza que los tribunales vienen obligados a evitar. Es realmente sorprendente que la mayoría apruebe un proceder tan cuestionable como el de autos. Su aval en estas circunstancias significa darle carta blanca a los patronos y a los tribunales de instancia para que ignoren, sin clara y excepcional justificación, los rigurosos requerimientos de la Ley Núm. 2, *supra.*

Como se sabe, la Ley Núm. 2, *supra,* es parte integral de la insigne legislación laboral del país. Persigue proteger al obrero en la lucha desigual que éste encara al demandar

judicialmente a su patrono, quien tiene recursos mucho mayores que los suyos para atender la contienda litigiosa. Persigue, además, resolver la disputa salarial a la brevedad posible, porque el obrero despedido puede estar sin medios económicos para lograr su subsistencia y la de su familia. La Ley Núm. 2, *supra*, pues, persigue fines de la mayor justicia social, con los cuales debemos estar inquebrantablemente comprometidos. A la luz de esos fines, en vista también del claro mandato legislativo, y tomando en cuenta la injustificable situación del caso concreto ante nos, es realmente desconcertante que la mayoría de este Foro haya decidido utilizar este caso para trastocar tan abarcadoramente las disposiciones de la Ley Núm. 2, *supra*. El intento de la mayoría de facilitar el manejo de los casos en los foros de instancia se traduce aquí en un grave menoscabo de los intereses de los trabajadores a favor de las manipulaciones judiciales de algunos patronos. Por todo ello, disiento.