EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edgar Rodríguez Gómez<br><br>Peticionario<br><br>v.<br><br>Multinational Insurance Co.;<br>Multinational Life Insurance Co.<br><br>Recurridas | Certiorari<br><br>2021 TSPR 88<br><br>207 DPR ____ |

Número del Caso:  CC-2018-663

Fecha: 25 de junio de 2021

Tribunal de Apelaciones:

     Panel XI

Abogados de la parte peticionaria:

     Lcdo. Luis Varela Ortiz
     Lcdo. Carlos Mondríguez Torres


Abogados de la parte recurrida:

     Lcdo. Alberto R. Estrella Arteaga
     Lcdo. Leonardo Cabán Rodríguez
     Lcdo. Erik A. Rosado Pérez

Materia: Sentencia con Opinión Disidente.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Edgar Rodríguez Gómez

    Peticionario

       v.                  CC-2018-0663

Multinational Insurance
Co.; Multinational Life
Insurance Co.

    Recurridas

SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2021.

En este caso nos corresponde determinar si el Tribunal de Apelaciones erró al revocar una Sentencia que emitió el Tribunal de Primera Instancia. En virtud de ese dictamen, el foro primario declaró con lugar una reclamación por despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, infra. Lo anterior, luego de celebrar una vista en rebeldía limitada al cómputo de la mesada sin corroborar la veracidad y suficiencia de las alegaciones contenidas en una Querella enmendada.

A continuación, exponemos el trasfondo fáctico y procesal que originó esta controversia.

## I

El 23 de diciembre de 2013 el Sr. Edgar Rodríguez Gómez (peticionario) presentó una Querella por despido injustificado contra Multinational Insurance Company. Asimismo, se acogió al trámite sumario que provee la Ley Núm. 2, infra. Alegó que Multinational Insurance Company adquirió National Life Insurace Co. (NALIC), por lo que se convirtió en patrono sucesor. Adujo que trabajó para NALIC durante cinco (5) años. Adicionalmente, alegó que fue despedido el 30 de diciembre de 2011.

Oportunamente, Multinational Insurance Company presentó su contestación a la Querella. Sostuvo que era una aseguradora independiente y separada de NALIC, por lo que negó haberla adquirido. Añadió que el peticionario renunció libre y voluntariamente a su empleo en NALIC. Además, adujo que el peticionario firmó un *Acuerdo y Relevo General* y que, en virtud de ese acuerdo, el peticionario, libre y voluntariamente, relevó de responsabilidad a NALIC y a todas sus entidades predecesoras, sucesoras, afiliadas, subsidiarias, cesionarias, tenedoras de acciones o matrices, y otros, en cuanto a cualquier reclamación relacionada directa o indirectamente con la relación del empleo que haya existido entre las partes. Por último, alegó que el peticionario nunca trabajó para Multinational Insurance Company, ni Multinational **Life** Insurance Company luego del 10 de noviembre de 2011.

Luego de varios trámites procesales, el peticionario y Multinational Insurance Company presentaron una moción conjunta con un informe inicial sobre la tramitación del caso.[1] En el umbral de la etapa del descubrimiento de prueba, el peticionario solicitó permiso al foro primario para enmendar la Querella. Lo anterior, con el único propósito de incluir a Multinational **Life** Insurance Company (recurrida) como parte demandada. En apoyo a su solicitud, el peticionario explicó que la enmienda no alteraría la querella original, por lo que no causaría perjuicio. Añadió que, como producto de la enmienda que solicitó, Multinational Insurance Company podría quedar relevada de este pleito.[2] A su vez, el peticionario reiteró su solicitud de acogerse al procedimiento sumario provisto en la Ley Núm. 2, infra. El foro primario permitió la enmienda y autorizó la expedición del emplazamiento a la recurrida. El emplazamiento se diligenció el 4 de septiembre de 2014.

El 24 de septiembre de 2014 la recurrida y Multinational Insurance Company contestaron conjuntamente la Querella enmendada. Reiteraron las mismas defensas que se esbozaron previamente en la contestación a la Querella original. Asimismo, la recurrida y Multinational Insurance Company presentaron una moción mediante la cual solicitaron al foro primario la conversión del pleito al trámite ordinario.

El 10 de octubre de 2014 el peticionario solicitó al foro

---

[1] Apéndice, pág. 90.
[2] Apéndice, pág. 80.

primario la anotación de rebeldía de la recurrida.[3] En particular, adujo que la recurrida no contestó la **Querella enmendada** en el término de diez días dispuesto en la Ley Núm. 2, infra. Resaltó que la recurrida presentó su contestación veinte días después de haber sido emplazada y sin solicitar prórroga para ello.

La recurrida y Multinational Insurance Company se opusieron a la solicitud de anotación de rebeldía.[4] En síntesis, argumentaron que Multinational Insurance Company presentó su contestación a la Querella oportunamente y en estricto cumplimiento a los términos dispuestos por la Ley Núm. 2, infra.[5] No obstante, resaltaron que esa Ley nada dispone para la **contestación a una enmienda**.[6] En consecuencia, alegaron que, ante ese vacío jurídico procedía aplicar la Regla 13.1 de Procedimiento Civil.[7] Fundamentaron que esa Regla le exige a una parte notificar su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original, o dentro de veinte días de haber sido notificada de la alegación enmendada, cualquiera de estos plazos el que sea más largo.[8]

Considerados los argumentos de las partes, el foro primario notificó una Orden mediante la cual denegó la

---

[3] *Apéndice*, pág. 161.
[4] *Apéndice*, pág. 171.
[5] Íd., págs. 171-172.
[6] Íd., pág. 172.
[7] Íd., págs. 172-173.
[8] Íd., pág. 173.

anotación de rebeldía.[9] A su vez, resolvió que los demás asuntos se discutirían en una vista pautada para el 20 de noviembre de 2014. Llegado el día, el peticionario desistió en corte abierta de su reclamación en contra de Multinational Insurance Company. El foro primario así lo hizo constar y señaló que el pleito continuaría contra la recurrida. No obstante, el foro primario aclaró lo siguiente:

> **"En un caso normalmente de Ley 80, esta juez no concede que se convierta en un procedimiento ordinario porque no se está trayendo ninguna otra reclamación, sin embargo, hay un caso en otra Sala que incide o podría incidir de alguna manera en la reclamación laboral que tiene el querellante en esta Sala y eso crea problemas y dificultades.**
>
> […]
>
> **Lo que realmente habría que analizar es si por virtud de ese acuerdo que se firmó hubo o no un relevo y si hubo o no una renuncia por parte de este"**.[10]

Justo dentro del procedimiento para que el caso se convirtiera al trámite ordinario, el 1 de diciembre de 2014 el peticionario presentó un recurso de *certiorari* ante el foro apelativo intermedio. Señaló como error que el foro primario no tenía facultad para aceptar la contestación a la Querella enmendada que la recurrida presentó el 24 de septiembre de 2014. Argumentó que la presentación se hizo fuera del término de diez días provisto por la Ley Núm. 2, infra. Luego de los trámites de rigor, el foro intermedio dictó una Sentencia mediante la cual revocó al foro primario.

---

[9] *Apéndice*, pág. 185.
[10] *Apéndice*, pág. 227. (Énfasis suplido) (Expresiones de la Hon. Navas Auger quien originalmente atendió el caso).

Resolvió que el foro primario debió anotarle la rebeldía a la recurrida.[11]

Continuados los procedimientos, el foro primario le anotó la rebeldía a la recurrida.[12] A su vez, dejó sin efecto el señalamiento de Conferencia con Antelación a juicio. En su lugar, señaló una vista en rebeldía. Aclaró que esa vista se celebraría a los únicos efectos del cómputo de la mesada.

De manera paralela, y pendiente la celebración de la vista en rebeldía, el peticionario presentó una *Moción para que se dicte sentencia sin necesidad de vista*. Argumentó que, una vez anotada la rebeldía, el efecto sería que se estiman aceptadas todas las materias bien alegadas en la Querella. En consecuencia, sostuvo que procedería realizar el cómputo de la mesada de conformidad con la Ley Núm. 80-1976, infra, sin necesidad de vista.

Retomados los procedimientos ante el foro primario, se suscitaron varios trámites procesales. Entre ellos, la recurrida presentó una *Solicitud para que se emita Resolución mediante la cual queden debidamente establecidas las alegaciones y materias de la Querella enmendada que no podrán considerarse como admitidas a la luz de la normativa jurisprudencial aplicable a los casos en rebeldía*. Allí nuevamente argumentó que el efecto de la anotación de la

---

[11] Inconforme, la recurrida acudió ante este Tribunal. En síntesis, argumentó que no procedía la anotación de rebeldía. No obstante, el 12 de abril de 2016, emitimos una Sentencia mediante la cual revocamos al foro apelativo intermedio fundamentado únicamente en la falta de jurisdicción. Lo anterior, pues el peticionario presentó el recurso tardíamente.

[12] *Apéndice*, pág. 294.

rebeldía es que se consideren aceptadas aquellas materias que hayan sido **correctamente alegadas**. De esa manera, sostuvo que en la Querella enmendada existían alegaciones insuficientes e incorrectamente alegadas que no podían darse por admitidas. Puntualizó que, sobre esas alegaciones insuficientes sí podía presentar prueba. En consecuencia, hizo una relación de las materias incorrectamente alegadas e incluyó prueba en apoyo a su contención. Entre esa prueba, anejó una **carta de renuncia** del peticionario con fecha del **11 de noviembre de 2011**.[13]

De otra parte, el peticionario presentó una solicitud para que se dictara sentencia en rebeldía sin necesidad de vista. Nuevamente, la recurrida se opuso.[14] Añadió que procedía que el caso se dilucidara en un juicio plenario. En apoyo a su contención, anejó el *Acuerdo y Relevo General* que firmó el peticionario y mediante el cual éste recibió $80,730.37 al presentar su renuncia.[15]

Sin haber adjudicado la reclamación principal sobre la responsabilidad, si alguna, de la recurrida como supuesto patrono, el foro primario reiteró que la vista en rebeldía estaría limitada únicamente para efectos del cómputo de la mesada.[16] Apercibió al peticionario de ir preparado para presentar prueba en torno al cómputo de la mesada.[17] De otra parte, el foro primario denegó la *Solicitud para que se emita*

---

[13] *Apéndice*, pág. 261.
[14] *Apéndice*, págs. 371-386.
[15] Íd., págs. 387-397.
[16] *Apéndice*, pág. 420.
[17] Íd., pág. 421.

*Resolución mediante la cual queden debidamente establecidas las alegaciones y materias de la Querella enmendada que no podrán considerarse como admitidas a la luz de la normativa jurisprudencial aplicable a los casos en rebeldía* que la recurrida presentó. Razonó que no procedía dilucidar el caso en un juicio plenario ya que la recurrida se encontraba en rebeldía.[18]

Llamado el caso para la celebración de la vista en rebeldía, la representación legal del peticionario expresó que solamente sometería la W-2 certificada por el Departamento de Hacienda correspondiente a los años 2009 y 2010.[19] Por su parte, la recurrida argumentó que de ese documento no surge el nombre del patrono, y tampoco establece el salario más alto devengado.[20] Añadió que admitir el documento tendría el efecto de enmendar las alegaciones de la Querella.[21]

Culminado el desfile de prueba, la recurrida hizo una *Moción de Non Suit* en corte abierta y argumentó al respecto.[22] Sometido el caso y evaluados los argumentos de las partes, el foro primario dictó Sentencia.[23] Declaró sin lugar la *Moción de Non Suit* y con lugar la acción por despido injustificado.[24] El foro primario fundamentó su determinación

---

[18] Íd.
[19] Íd., págs. 441-442.
[20] Íd., pág. 441.
[21] Íd., pág. 441.
[22] Íd., pág. 442.
[23] Íd., págs. 446-452.
[24] Íd., pág. 452.

en que "[e]n el caso de autos las alegaciones que expone la Querella enmendada son suficientes para dar por probado el hecho del [d]espido".[25] Además, razonó que "por estar en rebeldía, [la recurrida] no pudo demostrar la justa causa del despido del [peticionario]".[26] Como resultado, le impuso a la recurrida el pago de cierta cuantía en concepto de indemnización.[27]

Inconforme, la recurrida acudió al foro apelativo intermedio y solicitó la revocación de la referida Sentencia. En lo pertinente, argumentó que el foro primario emitió una Sentencia en su contra por despido injustificado a base de alegaciones insuficientes. En particular, adujo que esas alegaciones no establecen los hechos específicos que hacían al peticionario merecedor de tal remedio. De esa manera, alegó que el peticionario no puso al foro primario en posición de evaluar el tema principal de la responsabilidad del patrono, ni el computo de la mesada. Añadió que ello constituyó un grave fracaso a la justicia, pues el foro primario no corroboró la veracidad de las alegaciones y al ser insuficientes no podían darse por admitidas. El peticionario, por su parte, reprodujo el argumento de la anotación de rebeldía y sostuvo que las alegaciones de la Querella enmendada eran suficientes.

Tras la evaluación de rigor, el foro apelativo intermedio

---

[25] Íd., pág. 450.
[26] Íd.
[27] Íd., pág. 452.

dictó una Sentencia mediante la cual revocó al foro primario. Fundamentó su determinación en que las alegaciones, según redactadas en la Querella enmendada, eran conclusorias.[28] Resaltó que no surgen de la Querella enmendada hechos suficientes para establecer el hecho básico de que ocurrió un despido, pues solo menciona que lo hubo.[29] De esa manera, razonó que el foro primario incidió al limitar la vista en rebeldía a la presentación de prueba sobre la mesada sin antes hacer el análisis sobre la suficiencia de las alegaciones.[30] Sostuvo que lo anterior es parte de los procedimientos revisables en casos como este.[31] En consecuencia, ordenó la celebración de una vista evidenciaria para dilucidar la suficiencia de las alegaciones.

Oportunamente, el peticionario presentó el recurso de *certiorari* que nos ocupa. En síntesis, argumentó que el foro apelativo intermedio erró por dos fundamentos. Primero, al decretar la procedencia de la revisión y revocar al foro primario a pesar de que la Ley Núm. 2, infra, establece que el mecanismo de revisión está disponible para la revisión de los procedimientos exclusivamente. Segundo, al determinar que las alegaciones de la Querella enmendada no eran suficientes para establecer el hecho básico del despido.

Con el beneficio de las comparecencias de ambas partes, resolvemos.

---

[28] Rodríguez Gómez v. Multinational Ins. Co., 2018WL4333971, KLCE2018-00615, pág. 23.
[29] Íd.
[30] Íd.
[31] Íd.

## II

### A. *Ley de indemnización por despido injustificado*

El despido se ha definido como la ruptura unilateral, que hace el patrono, del contrato individual de trabajo celebrado con uno o varios trabajadores. Díaz v. Wyndham Hotel, Corp., 155 DPR 364, 374 (2001) (citando a C. Zeno Santiago, *El despido y la política social en nuestro estado de derecho*, 34 Rev. Jur. UIPR 213, 214 (2000)). Véase, C. Zeno Santiago, V. Bermúdez Pérez, *Tratado de Derecho del Trabajo*, Pubs. JTS, 2003, T. I, pág. 97. El rompimiento de esa relación laboral conlleva, en ocasiones, la pérdida del sustento económico para el acceso a los artículos y servicios indispensables del diario vivir. Íd.

A esos fines, mediante la aprobación de la *Ley de indemnización por despido injustificado*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185 et seq. (Ley Núm. 80-1976), se les brindó a las personas que han sido despedidas sin justa causa, la oportunidad de disfrutar de una indemnización que les permita suplir sus necesidades básicas durante el tiempo que les pueda tomar conseguir un nuevo empleo. Díaz v. Wyndham Hotel, Corp., supra, pág. 375.

De otra parte, nuestro ordenamiento jurídico no prohíbe absolutamente el despido de un empleado o empleada. Rivera Figueroa v. The Fuller Brush. Co., 180 DPR 894, 905 (2011). Más bien, castiga el despido sin justa causa. Íd. En consonancia, la Sec. 9.1 de las *Guías para la Interpretación*

*de la Legislación Laboral de Puerto Rico*, pág. 123, aclara que "el esquema habilitado por la Ley Núm. 80-1976, supra, constituye realmente una penalidad al despido sin justa causa, **toda vez que desincentiva, pero no prohíbe, los despidos injustificados**". (Énfasis suplido). Por eso, "distinto al tratamiento que se le otorga a un despido discriminatorio, la Ley Núm. 80-1976, supra, concede exclusivamente una indemnización o mesada de conformidad con el tiempo trabajado para el patrono en cuestión, pero no concede reposición en el puesto de trabajo". Íd.

En particular, el Art. 1 de la Ley Núm. 80-1976, supra, dispone las circunstancias que deben ocurrir para que un trabajador o trabajadora tenga derecho a una indemnización como resultado de su despido. Debe tratarse de: (1) un empleado o empleada que trabaje para un patrono mediante remuneración; (2) contratado sin tiempo determinado; (3) que fuere despedido sin que haya mediado una justa causa. 29 LPRA sec. 185a.

Ahora bien, es de importancia palmaria resaltar que la Ley Núm. 80-1976, supra, ha sufrido enmiendas recientes. No obstante, según redactada al momento de la ocurrencia de los hechos que originaron este caso, ante una reclamación por despido injustificado, el patrono viene obligado a alegar en su contestación a la demanda los hechos que dieron origen al despido. 29 LPRA sec. 185k. Dicho de otra manera, una vez un trabajador o trabajadora presenta una reclamación al amparo

de la Ley Núm. 80-1976, supra, y cumple con los requisitos explicados arriba mediante alegaciones suficientes, se activa la presunción de que el despido fue injustificado. Activada esa presunción, le corresponde al patrono probar, mediante preponderancia de la prueba, que existía justa causa para el despido.

En un pleito al amparo de la Ley Núm. 80-1976, supra, para que un trabajador o trabajadora pueda valerse de la presunción fuerte de que su despido fue injustificado, **tiene que presentar prueba demostrativa** de que, en efecto, lo despidieron. Rivera Figueroa v. The Fuller Brush. Co., supra, págs. 911-912. Así, la presunción de que el despido fue injustificado no se activa hasta tanto se logre persuadir al juzgador o juzgadora de la ocurrencia de ese hecho básico. Íd., pág. 912. Por eso, hemos resuelto que la mera alegación de un hecho básico, sin haberlo establecido debidamente, no activa una presunción que permita la inferencia de un hecho presumido. Íd. Véase McCrillis v. Aut. Navieras de P.R., 123 DPR 113, 141 (1989).

En consonancia, como nos dice el profesor Chiesa Aponte, "[e]l debido proceso de ley exige que haya un vínculo racional entre el hecho básico y el hecho presumido. En ausencia de ese vínculo habría una arbitrariedad procesal, incompatible con el debido proceso de ley". E. Chiesa Aponte, *Reglas de Evidencia Comentadas*, Eds. SITUM, 2016, pág. 62. Bajo la óptica de la Ley Núm. 80-1976, supra, esto significa que, en

cuanto a la controversia sobre la justificación del despido, el empleado o empleada cobijado por la presunción podría prevalecer en el pleito sin más evidencia que la misma presunción que activó. Ahora bien, como explicamos, para activar esa presunción **tiene que presentar inicialmente alguna prueba para demostrar la existencia del hecho base que la justifica**. Rivera Figueroa v. The Fuller Brush. Co., supra, pág. 913.

No podemos olvidar que cuando hablamos del peso de la prueba en una acción judicial, nos referimos a la obligación de convencer al juzgador o juzgadora de que los hechos alegados ocurrieron de una forma en particular. R. Emmanuelli Jiménez, *Prontuario de derecho probatorio puertorriqueño*, 3era ed., San Juan, Ed. SITUM, 2010, pág. 121. En consecuencia, los contornos jurídicos del peso de la prueba y las presunciones están inexorablemente atadas.

El análisis que antecede demuestra inequívocamente que las reclamaciones que emanan de las relaciones obrero-patronales, por su naturaleza y finalidad, ameritan resolverse a la brevedad posible y en observancia al marco jurídico que las regula. Por eso, la legislación laboral permite, además, que las reclamaciones de salarios y beneficios al amparo de la Ley Núm. 80-1976, supra, se puedan tramitar con mayor celeridad al amparo de la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, infra.

**B. *Ley de Procedimiento Sumario de Reclamaciones Laborales*.**

La Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 et seq. (Ley Núm. 2), en esencia provee un mecanismo procesal judicial que persigue la consideración y adjudicación rápida de las querellas presentadas por los obreros o empleados, principalmente en casos de reclamaciones salariales y beneficios. Vizcarrondo Morales v. MVM, Inc., 174 DPR 921, 928 (2008); Rivera v. Insular Wire Products Corp., 140 DPR 912, 923 (1996). Éstos son casos que, por su naturaleza y finalidad, requieren resolverse a la brevedad posible. Íd.

A tales fines, la Ley Núm. 2, supra, estableció una serie de criterios que los tribunales y las partes deben respetar. En particular, de esos criterios hemos enfatizado los siguientes: (1) términos cortos para la contestación de la querella que presentó el trabajador o la trabajadora; (2) criterios para la concesión de una sola prórroga para contestar la querella; (3) un mecanismo para el emplazamiento del patrono querellado; (4) el procedimiento para presentar defensas y objeciones; (5) la facultad del tribunal para dictar sentencia en rebeldía cuando el patrono querellado no cumpla con los términos provistos para contestar la querella. 32 LPRA, secs. 3120, 3121, 3133; Vizcarrondo Morales v. MVM, Inc., supra, pág. 929; Rivera v. Insular Wire Products Corp., supra, págs. 923-924.

El carácter sumario del procedimiento establecido en la Ley Núm. 2, supra, le impone al patrono querellado atender con celeridad la querella presentada en su contra. En esa dirección, la Sec. 3 de la referida Ley, dispone que el patrono presentará la contestación a la querella por escrito en los diez días siguientes a la notificación si ésta se hace en el distrito judicial donde se promueve la acción, y en los quince días en los demás casos. 31 LPRA sec. 3120. Si el patrono querellado no presenta su contestación en el término establecido, "se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle". 32 LPRA sec. 3120. No obstante, el patrono querellado puede solicitar al tribunal una prórroga para responder, si presenta bajo juramento una moción mediante la cual explique detalladamente los motivos que la justifiquen. 32 LPRA sec. 3120. En tales casos, el tribunal podrá concederla de encontrar causa justificada. 32 LPRA sec. 3120.

De lo anterior se desprende que, "como norma general, luego de que se extingue el término para contestar la querella sin que se haya justificado adecuadamente la incomparecencia, el tribunal está impedido de tomar cualquier otra determinación que no sea anotarle la rebeldía al patrono querellado". Vizcarrondo Morales v. MVM, Inc., supra, pág. 935. A pesar de la celeridad que exige la Ley Núm. 2, supra, al patrono querellado, "no es, ni puede ser, una carta en blanco para la concesión de remedios a trabajadores o trabajadoras que no han justificado adecuadamente, mediante

alegaciones o prueba, hechos que avalen su derecho a lo reclamado". Rivera v. Insular Wire Products, Corp., supra, pág. 928.

Ahora bien, a pesar del carácter sumario de la Ley Núm. 2, supra, no fue la intención del legislador imponer un trámite inflexible e injusto para el patrono querellado. Lucero v. San Juan Star, 159 DPR 494, 504 (2003). Ciertamente, es norma reiterada que el carácter reparador de este procedimiento requiere que la ley sea interpretada liberalmente a favor del empleado. Íd. No obstante, la Ley Núm. 2, supra, no puede ser interpretada ni aplicada en el vacío. Íd., pág. 506. Aun ante casos que parezcan ser iguales, en ocasiones los hechos de esos casos requerirán tratamientos distintos en aras de conseguir un resultado justo. Íd.

**C. La anotación de rebeldía bajo la Ley Núm. 2.**

Como vimos, al amparo de la Ley Núm. 2, supra, si el patrono no presenta contestación en la forma y manera que se dispone en la Sec. 3 de la Ley, 32 LPRA sec. 3120, el tribunal tiene que ver el caso en rebeldía. Por tanto, debemos recurrir a las disposiciones específicas y normas interpretativas sobre la sentencia en rebeldía bajo la Regla 45 de Procedimiento Civil, 32 LPRA Ap. V, que no estén en conflicto con la Ley Núm. 2, supra.

La Regla 45.1 de Procedimiento Civil, supra, dispone que procederá la anotación de rebeldía "[c]uando una parte contra la cual se solicite una sentencia que concede un remedio

afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas". Sabido es que "[e]l propósito de estar sujeto a esta anotación es como disuasivo contra aquellos que puedan recurrir a la dilación como un elemento de su estrategia en la litigación". Ocasio v. Kelly Servs., 163 DPR 653, 670-671 (2005) (*citando* a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T.II, pág. 750).

Reiteradamente, hemos razonado que la consecuencia jurídica de la anotación en rebeldía es que se admitan como ciertas todos y cada uno de los hechos **correctamente alegados**. Ocasio v. Kelly Servs., supra, pág. 671; Álamo v. Supermercado Grande, Inc., 158 DPR 93 (2002); Colón v. Ramos, 116 DPR 258 (1985); Continental Ins. Co. v. Isleta Marina, 106 DPR 809, 815 (1978). Ahora bien, hemos sido enfáticos al expresar "que los tribunales no son meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía". Rivera v. Insular Wire Products Corp., supra, pág. 931. Bajo el mismo razonamiento, resolvimos que un "trámite en rebeldía no garantiza, *per se*, una sentencia favorable al demandante; **el demandado no admite hechos incorrectamente alegados como tampoco conclusiones de derecho**". Íd. (Énfasis suplido). Tampoco la parte en rebeldía renuncia a las defensas de falta de jurisdicción ni de que la demanda no aduce hechos constitutivos de una causa de acción en favor del reclamante. Continental Ins. Co. v. Isleta Marina, supra, pág. 816.

Como corolario de lo anterior, "reconocimos que en el descargo de la función judicial, el tribunal **deberá** celebrar las vistas que sean necesarias y adecuadas para comprobar cualquier alegación". Íd. (Énfasis suplido). Nutrido del mismo razonamiento, hemos expresado que "el proceso de formar conciencia judicial exige la comprobación de cualquier aseveración mediante prueba". Ocasio v. Kelly Servs., supra, pág. 671 (*citando* a Hernández v. Espinosa, 145 DPR 248, 272 (1998)). En un pleito en rebeldía, esto significa que, si un tribunal necesita comprobar la veracidad de cualquier alegación o hacer una investigación sobre cualquier otro asunto para poder dictar sentencia en rebeldía, "deberá celebrar las vistas que estime necesarias y adecuadas". Ocasio v. Kelly Servs., supra, pág. 671; Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 DPR 563, 577-578 (1997); Continental Ins. Co. v. Isleta Marina, supra, pág. 816.

Respecto a las sentencias dictadas en rebeldía, bajo el procedimiento sumario de la Ley Núm. 2, supra, hemos resuelto que "las alegaciones concluyentes y las determinaciones de derecho, al igual que los hechos alegados incorrectamente, **no son suficientes** para sostener una determinación de responsabilidad del patrono". Ocasio v. Kelly Servs., supra, pág. 672. (Énfasis suplido). A esos efectos resolvimos que "para que el tribunal pueda dictar sentencia en rebeldía, la parte querellante deberá **alegar correctamente hechos específicos** los cuales, de su faz, sean demostrativos que, de ser probados, lo hacen acreedor del remedio solicitado". Íd.

(Énfasis suplido); <u>Ruiz v. Col. San Agustín</u>, 152 DPR 226, 236 (2000). Lo anterior está en armonía con la obligación inicial que tiene el trabajador o trabajadora querellante de **establecer el hecho básico** del despido, a satisfacción del juzgador, **con alegaciones suficientes.**

III

A tenor del marco jurídico explicado, pasamos a analizar las alegaciones contenidas en las querellas del caso de epígrafe.

En la **Querella original** que el peticionario presentó el **23 de diciembre de 2013** hizo las alegaciones siguientes:

1. La querellada, **Multinational Insurance Co.,** es una compañía de seguros con oficinas en la Avenida Luis Muñoz Rivera 510, en San Juan Puerto Rico y operaciones en todo el archipiélago de Puerto Rico.
2. El querellante … trabajó para National Life Insurance, Co. (NALIC), durante más de cinco (5) años, mediante contrato de empleo a tiempo indeterminado, desde el 1 de marzo de 2006 hasta el **11 de noviembre de 2011.**
3. El 11 de noviembre de 2011, la querellada Multinacional Insurance Co., adquirió a NALIC, por compra, y se quedó con el edificio, activos, negocios y empleados de NALIC, convirtiéndose en patrono sucesor de ésta.
4. Multinational **retuvo al querellante** como empleado, pero **lo despidió el 30 de diciembre de 2011.**
5. El despido de la querellante fue uno **sin justa causa.**
6. El salario más alto devengado por el querellante fue de $276,000.00 anuales, equivalentes a $23,000.00 mensuales, y a $5,307.69 semanales.
7. Conforme a lo dispuesto en la Ley Núm. 80 … la parte querellante tiene derecho a recibir de la parte querellada el sueldo correspondiente a tres (3) meses por concepto de indemnización, o sea, $69,000.00 más una indemnización progresiva adicional equivalente al sueldo de dos (2) semanas ($10,615.38), multiplicado por los años completos de servicio (5), que en este caso equivaldría a $53,076.90, para un total de $122,076.90.
8. La parte querellante se acoge al procedimiento especial de carácter sumario establecido en la Ley Núm. 2, de 17 de octubre de 1961, según enmendada.

Por su parte, en la **Querella enmendada** que el peticionario presentó el **8 de agosto de 2014**, hizo las alegaciones siguientes:

1. Las querelladas, Multinational Insurance Co., y Multinational Life Insurance Co., son compañías de seguros con oficinas en la Avenida Luis Muñoz Rivera 510, en San Juan, Puerto Rico y operaciones en todo el archipiélago de Puerto Rico.
2. El querellante … trabajó para National Life Insurance, Co. (NALIC), durante más de cinco (5) años mediante contrato de empleo a tiempo indeterminado, desde el 1 de marzo de 2006 hasta el **30 de diciembre de 2011, cuando fue despedido**.
3. El 11 de noviembre de 2011, la querellada Multinational **Life** Insurance Company adquirió a NALIC, por compra, y se quedó con el edificio, activos, negocios y empleados de NALIC convirtiéndose en patrono sucesor de ésta.
4. Multinational **retuvo al querellante** como empleado, pero **lo despidió el 30 de diciembre de 2011**.
5. El despido fue uno sin justa causa.
6. El salario más alto devengado por el querellante fue de $276,000.00 anuales, equivalentes a $23,000.00 y a $5,307.69 semanales.
7. Conforme a lo dispuesto en la Ley Núm. 80 … la parte querellante tiene derecho a recibir de la parte querellada el sueldo correspondiente a tres (3) meses por concepto de indemnización, o sea, $69,000, más una indemnización progresiva adicional equivalente al sueldo de dos (2) semanas ($10,615.38), multiplicado por los años completos de servicio (5), que en este caso equivaldría a $53,076.90, para un total de $122,076.90.
8. La parte querellante se acoge al procedimiento especial de carácter sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada.

Como cuestión de umbral, se desprende de la Querella original y de la Querella enmendada que el peticionario no alegó que trabajó para la recurrida. Alegó que trabajó para NALIC y que, alegadamente, la recurrida adquirió a NALIC por compra. De otra parte, mencionó que la recurrida lo retuvo en

el empleo hasta el día del alegado despido el 31 de diciembre de 2011. A su juicio, el alegado despido fue uno sin justa causa. Todas esas alegaciones fueron debidamente negadas en la contestación a la Querella original que presentó Multinational Insurance Company oportunamente y que, posteriormente, fueron reiteradas en la contestación a la enmienda que el foro primario permitió a los únicos efectos de incluir a la recurrida como parte del pleito.

A pesar de lo anterior, para efectos de la presunción por despido injustificado, el peticionario únicamente alegó conclusoriamente que hubo un despido. No incluyó, ni de manera sucinta y sencilla, alegaciones suficientes que establecieran con hechos la ocurrencia del despido. En cambio, el peticionario se limitó a decir que ocurrió. Como vimos, establecer el hecho básico del despido —no así meramente mencionarlo— era medular para activar la presunción fuerte de que el despido fue uno injustificado. De haberla activado, el peticionario hubiera podido descansar en esa presunción.

A tono con lo anterior, nunca se activó la presunción de despido injustificado que provee la Ley Núm. 80-1976, supra. Como consecuencia necesaria, tampoco se invirtió el peso de la prueba. Por tratarse de alegaciones conclusorias e insuficientes, la anotación de rebeldía a la recurrida no tuvo el efecto de darlas por admitidas. Bajo la óptica del marco jurídico discutido, el peticionario no estableció que tenía derecho a la concesión de los remedios que solicitó en un procedimiento en contra de la recurrida, contra quien

tampoco se estableció si, en efecto, fue o no patrono del peticionario en algún momento. Recordemos que el hecho de la anotación de la rebeldía a la recurrida *per se* no le concede al peticionario el derecho que reclamó.

Nuestro deber es interpretar las leyes para lograr resultados armoniosos, mas no resultados absurdos o irrazonables. Rodríguez v. Syntex P.R., Inc., 148 DPR 604, 616 (1999). Nuestras decisiones no pueden conducir a resultados manifiestamente injustos.

Surge del expediente que, desde el 20 de noviembre de 2014, el foro primario expresó su inclinación a convertir el caso a uno bajo el trámite ordinario.[32] Lo anterior, pues tomó en consideración que, paralelamente, había un caso en otra Sala, cuya tramitación incidía, o podría incidir, en la reclamación laboral que el peticionario presentó.[33] En particular, porque el peticionario figuraba como demandado en aquel caso por alegado incumplimiento a sus deberes de fiducia.[34] En esa dirección, el foro primario recomendó esperar a la resolución de las imputaciones que se le hicieron al peticionario en el otro caso.[35] Cabe resaltar, que el foro primario, en ese entonces, hizo tal determinación tras explicar que la controversia giraba en torno a si el peticionario renunció o firmó un relevo.[36] Puntualizó que

---

[32] *Apéndice*, pág. 71.
[33] Íd., pág. 70.
[34] Íd.
[35] Íd.
[36] Íd.

existe una cuarta causa de acción en la Demanda que se presentó en el otro caso y que está relacionada con el contrato de servicios profesionales y la renuncia.[37] En suma, desde el umbral de la tramitación de este caso el foro primario advino en conocimiento de hechos que podrían demostrar, en su día, que el peticionario no tiene derecho a la concesión de un remedio.

A su vez, surge del expediente una carta con fecha del 11 de noviembre de 2011 mediante la cual el peticionario renunció a su cargo en NALIC.[38] Asimismo, surge que el 10 de noviembre de 2011 el peticionario firmó un *Acuerdo y Relevo General* mediante el cual recibió una compensación por la suma de $80,730.37 como resultado de su renuncia. Lo anterior demuestra que, desde el aspecto sustantivo, el peticionario tampoco tiene derecho a la concesión del remedio que reclamó. Después de todo, en casos como estos, la sustancia debe prevalecer sobre la forma.

Sería absurdo e irrazonable interpretar que, por el mero hecho de habérsele anotado la rebeldía al patrono querellado, se debe conceder automáticamente lo solicitado por el querellante. Máxime, si ello implica abstraernos de la totalidad de las circunstancias particulares de este caso y los documentos que obran en el expediente. Sin lugar a duda, desde su génesis se perfilaron las circunstancias indicativas que hubieran inclinado el péndulo a sostener que el

---

[37] Íd.

[38] *Apéndice*, pág. 261.

peticionario ni sustantiva, ni procesalmente, tiene derecho a la concesión de un remedio.

**IV**

Por los fundamentos que anteceden, revocamos al Tribunal de Apelaciones y desestimamos la causa de acción por despido injustificado que el peticionario presentó.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez disintió con Opinión escrita a la cual se unieron los Jueces Asociados señores Martínez Torres y Estrella Martínez.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Edgar Rodríguez Gómez

    Peticionario

       v.                        CC-2018-0663    *Certiorari*


Multinational Insurance Co.;
Multinational Life Insurance Co.

    Recurridas



Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la cual se unen los Jueces Asociados señores MARTÍNEZ TORRES y ESTRELLA MARTÍNEZ.



En San Juan, Puerto Rico, a 25 de junio de 2021.


Disentimos del curso de acción seguido por una mayoría de este Tribunal en el presente caso, ello por entender que -- contrario a lo que erróneamente se concluye en la *Sentencia* que hoy emite esta Curia -- el aquí peticionario, señor Edgar Rodríguez Gómez (en adelante, "señor Rodríguez Gómez"), sí estableció el hecho básico para que operase la presunción de despido injustificado contemplada en la Ley Núm. 80 de 30 de mayo de 1976, *infra*, en un escenario donde el patrono querellado se encontraba en rebeldía. Veamos.

I.

Los hechos medulares que dieron margen al presente litigio no están en controversia. Allá para el 23 de diciembre de 2013 -- un pleito tramitado al amparo del procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, *infra* -- el señor Rodríguez Gómez presentó una *Querella* por despido injustificado en contra de su patrono Multinational Insurance Company, ello según contemplado en la Ley Núm. 80 de 30 de mayo de 1976, *infra*. **En su querella, el señor Rodríguez Gómez alegó que trabajó para National Life Insurance Company (en adelante, "NALIC") durante más de cinco (5) años mediante contrato de empleo a tiempo indeterminado; que el 11 de noviembre de 2011 Multinational Insurance Company adquirió a NALIC y quedó con el edificio, activos, negocios y empleados de ésta última, convirtiéndose así en su patrono sucesor; y que el nuevo patrono le retuvo como empleado hasta el 30 de diciembre de 2011, fecha en que lo despidió sin justa causa.**

Enterado de lo anterior, el 2 de enero de 2014 Multinational Insurance Company presentó su contestación a la *Querella*. En ésta alegó que el señor Rodríguez Gómez renunció libre y voluntariamente a su empleo el 10 de noviembre de 2011; que no adquirió a NALIC, sino que esta última cambió de nombre a Multinational Life Insurance Company (en adelante, "MLIC") al cambiar de dueño; que es una aseguradora independiente y separada de MLIC; y que ambas compañías tienen personalidades jurídicas distintas.

Además, adujo que el señor Rodríguez Gómez firmó un *Acuerdo y Relevo General* mediante el cual relevó de responsabilidad a NALIC, y a cualesquiera otras personas o entidades que de alguna forma estuvieran relacionadas con dicha corporación, en cuanto a cualquier reclamación relacionada al empleo del peticionario y que, como parte del referido acuerdo, se le pagó $80,730.37. Multinational Insurance Company también solicitó al tribunal que tomara conocimiento de las alegaciones, defensas y adjudicaciones relacionadas al querellante en el caso *Multinational Life Insurance Company v. Carlos M. Benítez Rivera et al.*, K AC2012-0306.[39]

Tras lo alegado por Multinational Insurance Company en su contestación a la *Querella*, el señor Rodríguez Gómez solicitó al Tribunal de Primera Instancia permiso para enmendar su querella a los únicos fines de incluir a MLIC como parte querellada, lo cual el foro primario autorizó. Acto seguido, el 8 de agosto de 2014 se presentó la *Querella enmendada* y el emplazamiento dirigido a MLIC fue diligenciado el 4 de septiembre del mismo año.

---

[39] El referido caso surge a raíz de una demanda sobre violaciones de deberes de fiducia, cobro de dinero, incumplimiento contractual y daños presentada por Multinational Life Insurance Company en contra de los señores Carlos M. Benítez Rivera, Edgardo Van Rhyn Soler y Edgar Rodríguez Gómez, quienes fueron directores y oficiales de la corporación mientras ésta operaba con el nombre de NALIC. El Tribunal de Primera Instancia desestimó siete de las nueve causas de acción de la demanda y el Tribunal de Apelaciones confirmó dicho dictamen. Posteriormente, este Tribunal emitió una Opinión mediante la cual revocó la *Sentencia* emitida por el foro apelativo intermedio, por entender que dicho foro aplicó incorrectamente la norma establecida por el Tribunal Supremo de Estados Unidos en el caso *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, 417 US 703 (1974).

La *Querella enmendada*, en esencia, incluyó las mismas alegaciones que la *Querella* original. Ahora bien, en lo pertinente a la controversia que nos ocupa, en el mencionado documento se señala lo siguiente:

1. Las querelladas, Multinational Insurance Co. y [MLIC], son compañías de seguros con oficinas en la Avenida Luis Muñoz Rivera 510, en San Juan, Puerto Rico y operaciones en todo el archipiélago de Puerto Rico.

2. El querellante [aquí peticionario], quien reside en la calle Bouret 550 de San Juan, Puerto Rico y cuyo teléfono es el 787-501-1104, trabajó para National Life Insurance, Co. (NALIC), durante más de cinco (5) años, mediante contrato de empleo a tiempo indeterminado, desde el 1 de marzo de 2006 hasta el 30 de diciembre de 2011, cuando fue despedido.

3. El 11 de noviembre de 2011, la querellada [MLIC] adquirió a NALIC, por compra, y se quedó con el edificio, activos negocios y empleados de NALIC convirtiéndose en patrono sucesor de ésta.

4. Multinational retuvo al querellante como empleado, pero lo despidió el 30 de diciembre de 2011.

5. El despido del querellante fue uno sin justa causa.

6. El salario más alto devengado por el querellante fue de $276,000.00 anuales, equivalentes a $23,000.00 mensuales y a $5,307.69 semanales.

7. Conforme a lo dispuesto en la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, (29 LPRA 185(a) y siguientes), la parte querellante tiene derecho a recibir de la parte querellada el sueldo correspondiente a tres (3) meses por concepto de indemnización, o sea, $69,000.00, más una indemnización progresiva adicional equivalente al sueldo de dos (2) semanas ($10,615.38), multiplicado por los años completos de servicio (5), que en este caso equivaldría a $53,076.90, para un total de $122,076.90.

8. La parte querellante se acoge al procedimiento especial de carácter sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada.

Recibida la *Querella enmendada*, el 24 de septiembre de 2014 las querelladas Multinational Insurance Company y MLIC contestaron conjuntamente la misma. En el referido escrito, reiteraron las defensas expuestas por Multinational Insurance Company en su contestación a la *Querella* original.

**Posteriormente, el 10 de octubre de 2014 el señor Rodríguez Gómez solicitó se le anotara la rebeldía a las coquerelladas Multinational Insurance Company y MLIC. Ello debido a que -- a su juicio -- éstas no presentaron su contestación a la querella dentro del término de diez (10) días que dispone la Ley Núm. 2, *infra*, sino que lo hicieron veinte (20) días después de haber sido emplazadas, sin solicitar prórroga para ello.** A dicha solicitud, Multinational Insurance Company y MLIC se opusieron.

Así las cosas, el 21 de octubre de 2014 el Tribunal de Primera Instancia denegó la solicitud de anotación de rebeldía presentada por el señor Rodríguez Gómez. Dicha Resolución fue oportunamente notificada a todas las partes en el pleito.

En desacuerdo con dicho proceder, el 1 de diciembre de 2014 el señor Rodríguez Gómez acudió en *certiorari* ante el Tribunal de Apelaciones. Dicho foro revocó al Tribunal de Primera Instancia y ordenó la anotación de rebeldía en

contra de MLIC. Sin embargo, el 12 de abril de 2016 esta Curia emitió una *Sentencia* en la que se revocó la determinación del Tribunal de Apelaciones por dicho foro haber actuado sin jurisdicción, pues el recurso de *certiorari* se presentó fuera del término en ley que se tenía para ello.

Devuelto el caso ante la consideración del Tribunal de Primera Instancia para la continuación de los procedimientos, el 20 de febrero de 2015 el juez que presidía los procedimientos le anotó la rebeldía a MLIC.[40] La referida *Resolución* también fue oportunamente notificada a las partes en el litigio.

Así pues, tras varios incidentes procesales no necesarios aquí pormenorizar, el 6 de marzo de 2017 el foro primario emitió una nueva *Resolución* mediante la cual reiteró la anotación de rebeldía en contra de MLIC y señaló una vista en la que sólo se dilucidaría el cómputo de la mesada. Toda vez que MLIC se encontraba en rebeldía, el Tribunal de Primera Instancia puntualizó que su intervención en la vista estaría limitada a impugnar la cuantía reclamada.

Enterado de ello, el 13 de julio de 2017 el señor Rodríguez Gómez solicitó mediante moción la continuación de los procedimientos en el presente caso y que se dictara

---

[40] En la referida *Sentencia*, el foro primario indica que, aunque no obra sentencia parcial al respecto en el expediente, durante la Conferencia con Antelación a Juicio celebrada el 20 de noviembre de 2014, se acogió el desistimiento en cuanto a Multinational. Apéndice del *Certiorari*, pág. 52, esc. 1.

sentencia sin necesidad de celebrar una vista. Dicha solicitud el foro primario la declaró no ha lugar.

Meses más tarde, en diciembre de 2017 para ser específicos, MLIC presentó dos mociones ante el Tribunal de Primera Instancia en las que, entre otras cosas, solicitó que no se consideraran por admitidas varias alegaciones contenidas en la *Querella enmendada* presentada por el señor Rodríguez Gómez, debido a que fueron alegadas incorrectamente y otras consistían en alegaciones concluyentes o determinaciones de derecho. A ello, el señor Rodríguez Gómez se opuso.

Vistos los documentos presentados por ambas partes, el 2 de febrero de 2018 el Tribunal de Primera Instancia declaró no ha lugar las mociones presentadas por MLIC. Resolvió, además, que durante la vista evidenciaria en rebeldía el tribunal haría las determinaciones correspondientes sobre las alegaciones en la *Querella enmendada*.

Establecido lo anterior, el foro primario pautó la vista en rebeldía para el 5 de abril de 2018, en la que atendería únicamente el cómputo de la mesada del señor Rodríguez Gómez y en la que, nuevamente, señaló que la intervención de MLIC sería limitada a impugnar la cuantía reclamada. El Tribunal de Primera Instancia puntualizó, otra vez, que la parte querellada -- entiéndase MLIC -- se encontraba en rebeldía y que se le garantizaría el debido proceso de ley aplicable a estos casos.

Después de la presentación de sendos recursos ante el Tribunal de Apelaciones y ante este Tribunal, en los cuales MLIC cuestionó sin éxito la anotación de rebeldía en su contra, la vista en rebeldía fue celebrada el 5 de abril de 2018, según mencionamos anteriormente. En ésta, la prueba del señor Rodríguez Gómez se limitó a la presentación de las certificaciones sobre la retención de contribuciones, conocida como la "W2", para ciertos años en específico.

Además de objetar dicha prueba debido a que el salario reflejado en estas certificaciones no correspondía al salario alegado en la *Querella* original y la enmendada, MLIC solicitó la desestimación de la querella por insuficiencia de prueba (también conocida como *non suit*). MLIC también solicitó al tribunal que tomara conocimiento judicial de todos los hechos no susceptibles de controversia razonable; entre ellos, las admisiones judiciales del peticionario en la *Contestación Enmendada* a la Demanda en el caso K AC2012-0306 y la Opinión emitida por nuestro Tribunal Supremo en el caso *Multinational Ins. v. Benítez y otros*, 193 DPR 67 (2015).[41]

**Evaluados los planteamientos de ambas partes, el 25 de abril de 2018 el foro primario dictó una *Sentencia*, en la que determinó que las alegaciones que expone la *Querella enmendada* son suficientes para dar por probado el hecho del**

---

[41] Véase, nota al calce núm. 1.

**despido. Concluyó que, por estar en rebeldía, MLIC no pudo demostrar la justa causa para el despido del señor Rodríguez Gómez. Así pues, resolvió que el querellante pudo establecer que su despido fue injustificado y, por ende, era acreedor del remedio de la mesada.**

De otra parte, el Tribunal de Primera Instancia hizo constar en su *Sentencia* que no tenía autoridad para entrar a considerar defensas tales como que MLIC no es patrono sucesor o que existe un acuerdo de relevo de mesada, ya que evaluar dichas defensas equivaldría a permitirle a MLIC la presentación de prueba, por vía de conocimiento judicial, a pesar de la anotación de rebeldía. Consecuentemente, el foro primario declaró no ha lugar la desestimación de la querella y ha lugar la acción por despido injustificado.[42]

Inconforme con dicho dictamen, MLIC presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. A dicha solicitud, el señor Rodríguez Gómez se opuso.

Examinados los alegatos de ambas partes, el foro apelativo intermedio emitió una *Sentencia* en la cual revocó la determinación del foro primario. Ello, pues entendió que las alegaciones de la *Querella enmendada* no eran suficientes para establecer el hecho básico del despido y dar paso a la presunción de despido injustificado. Expresó, además, que dichas alegaciones eran conclusivas y no

---

[42] En la referida *Sentencia*, el foro primario indica que, aunque no obra sentencia parcial al respecto en el expediente, durante la Conferencia con Antelación a Juicio celebrada el 20 de noviembre de 2014, se acogió el desistimiento en cuanto a Multinational. Apéndice del *Certiorari*, pág. 52, esc. 1.

justificaban la determinación del Tribunal de Primera Instancia.

Conforme a lo anterior, el Tribunal de Apelaciones dejó sin efecto la *Resolución* de 2 de febrero de 2018 emitida por el Tribunal de Primera Instancia -- mediante la cual se limitó la vista en rebeldía a la presentación de prueba sobre la mesada --, así como la *Sentencia* dictada por el foro primario, y ordenó la celebración de una vista evidenciaria en rebeldía, de conformidad con lo resuelto por dicho foro. Dicha sentencia se le notificó a todas las partes en el litigio.

Insatisfecho con la determinación del Tribunal de Apelaciones, el señor Rodríguez Gómez presentó una petición de *certiorari* ante este Tribunal.[43] En la misma, señala que el foro apelativo intermedio erró al revocar la *Sentencia* de 25 de abril de 2018 y la *Resolución* de 2 de febrero de 2018 emitidas por el Tribunal de Primera Instancia, y al determinar que las alegaciones del querellante no son suficientes para establecer el hecho básico de que ocurrió un despido. Le asiste la razón.

No empece a lo anterior, una mayoría de los miembros de este Foro resuelve que, aunque a la recurrida se le anotó la rebeldía, el peticionario no estableció que tenía

---

[43] En primera instancia, este Tribunal denegó expedir el auto solicitado. No obstante, el 22 de febrero de 2019 determinamos expedir el mismo en reconsideración. Por su parte, MLIC presentó su correspondiente alegato en oposición.

derecho a la concesión de los remedios que solicitó. De ese proceder, según adelantamos, disentimos. Nos explicamos.

II.

Como se sabe, la *Ley de indemnización por despido injustificado*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.* (en adelante, "Ley Núm. 80"), está dirigida a la protección del empleo desalentando los despidos injustificados.[44] *Romero v. Cabrer Roig*, 191 DPR 643, 649 (2014); *Vélez Cortés v. Baxter*, 179 DPR 445, 465 (2010); *Feliciano Martes v. Sheraton*, 177 DPR 345, 379 (2009). Conforme a esta ley, aquellos empleados contratados por un periodo de tiempo indeterminado, que reciban una remuneración, y que sean despedidos de su empleo sin que haya mediado justa causa, tendrán derecho a recibir una compensación de su patrono, la cual se conoce como la mesada. Art. 1 de la Ley Núm. 80, 29 LPRA sec. 185a. Véase, además, *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Whittenburg v. Col. Ntra. Sra. del Carmen,* 182 DPR 937, 950 (2011). Esta indemnización constituye el remedio exclusivo para los empleados que han sido despedidos injustificadamente cuando no existe otra causa de acción al amparo de otros estatutos que prohíban el despido y concedan otros remedios. *García*

---

[44] La Ley Núm. 80, *supra*, fue enmendada por la Ley Núm. 4-2017, *Ley de transformación y flexibilidad laboral*, la cual establece en su Art. 1.2 que: "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando de los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en los Artículos de ésta". 29 LPRA sec. 121a. Toda vez que los hechos ante nuestra consideración ocurrieron con anterioridad a la vigencia de las enmiendas, éstas no son de aplicación en este caso.

*v. Aljoma*, 162 DPR 572, 597 (2004). Véase, además, *Vélez Cortés v. Baxter, supra*, pág. 466; *Romero v. Cabrer Roig, supra*.

En esa dirección, este Tribunal ha reiterado en numerosas ocasiones que, al presentarse una reclamación en virtud de la Ley Núm. 80, *supra*, se activa la presunción de que el despido fue injustificado. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 906-907 (2011); *Whittenburg v. Col. Ntra. Sra. del Carmen, supra*, págs. 956-957; *Feliciano Martes v. Sheraton, supra*, pág. 385. Conforme a lo dispuesto por la ley -- según estaba redactada al momento de los hechos de este caso -- una vez se activa la presunción de despido injustificado corresponde al patrono la carga probatoria de demostrar por preponderancia de prueba que existía justa causa para el despido. 29 LPRA sec. 185k. Véase, además, *Feliciano Martes v. Sheraton, supra*, págs. 385-386; *Miranda Ayala v. Hosp. San Pablo*, 170 DPR 734, 738 (2007); *Rivera v. Pan Pepín*, 161 DPR 681 (2004). De así probarse, éste quedaría eximido de pagar la mesada.

**Ahora bien, es menester señalar que para activar esta presunción el empleado tiene que demostrar que fue empleado de un comercio, industria u otro negocio; que su contrato era por tiempo indeterminado; que recibía remuneración por su trabajo, y que fue despedido de su puesto.** *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209 (2015); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586 (2013); *Rivera Figueroa*

*v. The Fuller Brush Co.*, *supra*. Este Tribunal también ha resuelto que el demandante tiene que aportar prueba que establezca los hechos básicos que dan lugar a la presunción. *Íd*. En particular, para que un empleado que insta una reclamación al amparo de la Ley Núm. 80 pueda estar cobijado por la presunción de que su despido fue injustificado, tiene que presentar prueba demostrativa de que, en efecto, fue despedido. *Íd*.

III.

De otra parte, es pertinente señalar que la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (en adelante, "Ley Núm. 2"), también conocida como *Ley de procedimiento sumario de reclamaciones laborales*, estableció un mecanismo procesal que permite adjudicar de forma rápida las querellas de los obreros y obreras, principalmente en casos de reclamaciones salariales y de beneficios. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723 (2016); *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 923 (1996). Dicho procedimiento busca desalentar el despido sin justa causa y proveer al empleado despedido los medios económicos para su sostenimiento y el de su familia en lo que consigue otro empleo. De esta forma, facilita la implementación de la política pública del Estado de proteger el empleo. *Medina Nazario v. McNeil Healthcare LLC*, *supra*; *Rivera v. Insular Wire Products Corp.*, *supra*.

Esta ley toma en cuenta la disparidad económica entre el patrono y el obrero, así como el hecho de que la mayoría de la información sobre la reclamación salarial está en posesión del patrono. Por ello, dispuso: (1) términos cortos para la contestación de las querellas; (2) criterios para la concesión de una sola prórroga para presentar la contestación de la querella; (3) un mecanismo para emplazar al patrono querellado; (4) el procedimiento para presentar defensas y objeciones; (5) criterios para la aplicación de las Reglas de Procedimiento Civil; (6) una limitación al uso de los mecanismos de descubrimiento de prueba; (7) una prohibición específica de presentar demandas o reconvenciones contra el querellante; (8) **la facultad del tribunal para dictar sentencia en rebeldía cuando el querellado incumpla los términos provistos para contestar la querella**, y (9) mecanismos para revisar y ejecutar las sentencias y el embargo preventivo. *Medina Nazario v. McNeil Healthcare LLC*, *supra*; *Rivera v. Insular Wire Products Corp.*, *supra*.

En lo pertinente a las controversias que nos ocupan, la Sección 3 de la Ley Núm. 2, *supra*, dispone que la parte querellada deberá presentar su contestación a la querella por escrito, dentro de un término de diez (10) días a partir de la notificación, si la misma se efectúa en el distrito judicial en que se promueve la acción, y dentro de quince (15) días, de llevarse a cabo en otro distrito judicial. 32 LPRA sec. 3120. Además, en la notificación de la querella

el secretario del tribunal debe apercibirle "que si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle". *Íd.*

Por otro lado, la Sección 4 de la referida ley, establece que "[s]i el querellado no radicara su contestación a la querella en la forma y en el término dispuestos en la sec. 3120 de este título, **el juez dictará** **sentencia contra el querellado, a instancias del** **querellante, concediendo el remedio solicitado**". (Énfasis suplido). 32 LPRA sec. 3121. La ley dispone que la sentencia dictada será final e inapelable. No obstante, la parte afectada por la misma podrá recurrir ante el Tribunal de Apelaciones mediante recurso de *certiorari* dentro de un término jurisdiccional de diez (10) días contados a partir de la notificación de la sentencia, pero sólo para revisar los procedimientos. *Íd.* Asimismo, el dictamen del Tribunal de Apelaciones podrá ser revisado por el Tribunal Supremo de Puerto Rico mediante recurso de *certiorari*, el cual deberá presentarse dentro de un término jurisdiccional de veinte (20) días, contados a partir de la notificación de la sentencia o resolución. *Íd.*

Es, pues, a la luz de la normativa antes expuesta, que -- desde el disenso -- procedemos a disponer del caso que nos ocupa.

IV.

Como ya mencionamos, en el presente caso, el peticionario, señor Rodríguez Gómez, alega que el Tribunal

de Apelaciones erró al revocar cierto dictamen emitido por el Tribunal de Primera Instancia tras concluir que las alegaciones en la *Querella enmendada* aquí en controversia no eran suficientes para establecer el hecho básico del despido y dar paso a la presunción de despido injustificado. Tiene razón el peticionario.

Y es que, de acuerdo con la normativa antes expuesta, para que la presunción contenida en la Ley Núm. 80, *supra*, se active es necesario que el empleado despedido alegue 1) que fue empleado de un comercio, industria u otro negocio; 2) que su contrato era por tiempo indeterminado; 3) que recibía remuneración por su trabajo, y 4) que fue despedido de su puesto. Una vez establecido lo anterior, el peso de la prueba para establecer que el despido fue justificado recae en el patrono, el cual viene obligado a alegar en su contestación a la demanda los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de responsabilidad.

Ahora bien, en un procedimiento sumario al amparo de la Ley Núm. 2, *supra* -- como es el de autos -- el patrono dispone de diez (10) días desde la notificación de la querella para interponer su contestación, como regla general, la cual es la única alegación responsiva que puede presentar. Si el patrono no contesta la querella dentro de dicho término ni solicita prórroga, el tribunal no tiene discreción para no anotarle la rebeldía al patrono.

**Una vez anotada la rebeldía, se admiten los hechos bien alegados en la querella y la parte en rebeldía no podrá presentar prueba en contra de las alegaciones de la querella, ni podrá levantar defensas afirmativas. Ello fue lo que, precisamente, ocurrió en la causa de epígrafe.**

En el caso de marras no está en controversia que MLIC presentó su contestación a la querella tardíamente. Es también un hecho incontrovertido que no solicitó una prórroga para presentar su contestación a la querella en la fecha en que lo hizo. En consecuencia, y de conformidad con lo dispuesto en la Ley Núm. 2, *supra*, forzosamente procedía la anotación de rebeldía en contra de ésta.

**Siendo ello así, el Tribunal de Primera Instancia estaba obligado a auscultar la adecuacidad de las alegaciones de la querella para establecer la causa de acción. En este caso en particular, de un análisis detallado de las alegaciones de la querella del señor Rodríguez Gómez, claramente se desprende que éstas efectivamente expresaban (1) que fue empleado de NALIC, cuyo nombre cambió a MLIC, según se alegó en la Contestación a querella original, (2) que su contrato era por tiempo indeterminado, (3) que recibía remuneración por su puesto y 4) que fue despedido, entre otras.** Las alegaciones anteriores, a todas luces, establecieron el hecho básico para activar la presunción de despido injustificado y así el peticionario revirtió el peso de la prueba a MLIC para que probara que no fue así. Es decir, no fueron alegaciones meramente conclusorias, ni

conclusiones de derecho. Véase, *León v. Rest. El Tropical*, 154 DPR 249, 262 (2001).

Toda vez que MLIC se encontraba en rebeldía, estaba vedada de presentar prueba en contra de las alegaciones de la querella y no podía levantar defensas afirmativas. Es decir, no podía probar que el despido fue justificado. Ante ello, la presunción de despido injustificado se mantuvo y procedía -- como así correctamente lo hizo -- que el foro primario aplicara el derecho, concediendo los remedios solicitados. Erró el Tribunal de Apelaciones al revocar dicho dictamen. Lamentablemente, hoy, una mayoría de este Tribunal no lo entendió así.

V.

Es, pues, por todo lo anterior que respetuosamente disentimos del curso de acción seguido por este Tribunal en el día de hoy.

Ángel Colón Pérez
Juez Asociado