Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EILEEN CASTRO TORRES <br><br> Parte Apelante <br><br> v. <br><br> COLLEGE ENTRANCE EXAMINATION BOARD; CORPORACIÓN ABC; COMPAÑÍA DE SEGUROS XYZ <br><br> Parte Apelada | KLAN202301059 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala de Bayamón <br><br> Núm.: BY2018CV00192 <br><br> Sobre: Ley 2; Despido Injustificado; Discrimen Religioso y por Impedimento |
|---|---|---|

Panel integrado por su presidente, el Juez Monge Gómez, el Juez Cruz Hiraldo y la Jueza Prats Palerm

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de agosto de 2024.

Comparece Eileen Castro Torres ("señora Castro Torres" o "Apelante") mediante recurso de *Apelación* y solicita la revisión de la *Sentencia* emitida el 14 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala de Bayamón ("TPI"). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Querella* instada por la señora Castro Torres en contra del College Entrance Examination Board ("College Board" o "Apelado") por despido injustificado; (2) ordenó el archivo con perjuicio de la causa de acción, y; (3) condenó a la Apelante al pago de costas.

Por los fundamentos que expondremos a continuación, se modifica la *Sentencia* apelada, a los únicos efectos de eliminar la imposición de costas a favor del College Board, y así modificada, se *Confirma.*

**I.**

Conforme surge del legajo apelativo, el 28 de abril de 2015, la Apelante fue despedida del puesto que ocupaba como Especialista de Artes Gráficas en el College Board. Como consecuencia, el 4 de

mayo de 2018 la señora Castro Torres presentó una *Querella* en contra de su expatrono, sobre despido injustificado, discrimen religioso y discrimen por impedimento, al amparo del procedimiento sumario que dispone la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como "*Ley de Procedimiento Sumario de Reclamaciones Laborales*" ("Ley 2-1961") 32 LPRA sec. 3118 *et seq.*

Surge de la *Querella* que, el 28 de abril de 2015, la señora Castro Torres fue citada a una reunión con el vicepresidente del College Board y dos representantes del College Board en los Estados Unidos. La Apelante sostuvo que, el propósito de la reunión era investigar un incidente en el cual una persona, vestida de blanco, entró al lugar de trabajo, tiró semillas de pimienta o sal en las oficinas de los gerentes y derramó un huevo y jugo de china en el elevador del edificio. Adujo que, durante la reunión, negó haber tenido participación en el referido incidente. Sin embargo, sostuvo que procedieron a despedirla como resultado de su presunta participación en el suceso. De igual manera, alegó que se sintió atacada y discriminada por sus creencias religiosas, ya que practica la religión Yoruba y que esto era del conocimiento de la compañía.

Luego de varios trámites procesales, el 21 de octubre de 2018, el College Board presentó una *Solicitud de Sentencia Sumaria*. El Apelado sostuvo que, la señora Castro Torres fue despedida por unos actos cometidos el 15 de abril de 2015, constitutivos de vandalismo, daños a la propiedad, violencia e intimidación en el empleo, los cuales afectaron el ambiente laboral de la compañía.

El 11 de diciembre de 2019, la señora Castro Torres presentó su *Oposición a Solicitud de Sentencia Sumaria*. En síntesis, alegó que las alegaciones de violencia e intimidación fueron utilizadas como un pretexto para su despido. Añadió que, su despido fue basado en los perjuicios y en el ánimo discriminatorio del vicepresidente de la compañía en su contra.

Evaluadas las mociones y sus correspondientes réplicas y dúplicas, el 23 de octubre de 2020, el TPI emitió una *Resolución*, mediante la cual declaró *No Ha Lugar* la solicitud de sentencia sumaria instada por el College Board. Sin embargo, el foro primario realizó un total de noventa y un (91) determinaciones de hechos incontrovertidos.

Posteriormente, los días 1 al 4 y 8 al 10 de noviembre de 2021, se celebró el juicio en su fondo. Durante el mismo, la Apelante presentó el testimonio de las siguientes personas: (1) Eileen Castro Torres; (2) Dr. Demy Arturo De Jesús, psicólogo de tratamiento; (3) Dr. Víctor Lladó, perito de la parte apelante; (4) Dra. Karim Janice Torres Sánchez, psicóloga de tratamiento; (5) Dr. Francisco Corretjer Catalán, oftalmólogo y médico de tratamiento; (6) Eddalis Batista Ortiz, ex compañera de trabajo en el College Board; (7) José Carreras, vicepresidente del College Board, y; (8) Julio Castro Amadeo, padre de la apelante.

Por su parte, el College Board presentó los siguientes testimonios: (1) José Carreras; (2) Pablo Federico Martínez Rivera, Director Ejecutivo de Operaciones; (3) Ranier Hernández Pérez, dueño de Prime Security and Technologies, compañía encargada de la instalación y mantenimiento de las cámaras de seguridad del College Board; (4) Miguel Cintrón, supervisor de la apelante; (5) Antonio Santos López; (6) Antonio Magriña, empleado quien presentó una queja por los actos de la apelante; (7) Eneris Pomales, empleada del College Board; (8) la señora Castro Torres, y; (9) la Dra. Arlene Rivera Mass, perito de la parte apelada.

Además de la prueba testifical presentada, las partes estipularon un total de catorce (14) documentos, incluyendo el *Employee Handbook* y el expediente de empleado de la señora Castro Torres. Entre la prueba documental presentada por el College

Board, figuraron dos (2) videos capturados por las cámaras de seguridad el día del incidente.

El 14 de noviembre de 2023, el TPI emitió una *Sentencia* mediante la cual ordenó el archivo con perjuicio de la causa de acción y condenó a la señora Castro Torres al pago de costas. El foro apelado realizó un total de trescientas cuatro (304) nuevas determinaciones de hechos incontrovertidos. Sobre el video capturado por las cámaras de seguridad el día del incidente, el foro de instancia señaló lo siguiente:

> [D]emuestra con claridad a la Querellante caminando por los pasillos de las oficinas de la Querellada y abriendo el puño de su mano mientras camina, regando una sustancia en la entrada de varias oficinas y las áreas comunes. Esta acción en el video no es un accidente, ni producto de tropiezo o descuido.[1]

En apretada síntesis, el TPI concluyó que el 17 de abril de 2015, en horas laborables, la señora Castro Torres entró a su lugar de trabajo y regó una sustancia arenosa y huevo crudo en las puertas de varias oficinas correspondientes a gerentes y supervisores. Determinó, además, que los actos de la señora Castro Torres infringieron varias políticas de la compañía al causar un ambiente de tensión en el trabajo. Asimismo, señaló que la deshonestidad de la Apelante durante el proceso investigativo, al negar los hechos capturados por las cámaras, fue el factor culminante que produjo su despido. Por tanto, aquilatada la prueba documental y testifical, el foro primario resolvió que el despido de la señora Castro Torres no constituyó discrimen religioso y estuvo justificado.

Inconforme, el 27 de noviembre de 2023, la señora Castro Torres acudió ante esta Curia mediante recurso de *Apelación* y solicitó la revisión de la *Sentencia* emitida el 14 de noviembre de 2023. La Apelante realizó los siguientes señalamientos de error:

---

[1] Véase, Apéndice de la Parte Apelante, a la pág. 68 (*Sentencia*).

**Erró el TPI al resolver que el despido fue justificado[,] a pesar de no habérsele provisto a la empleada disciplina progresiva y no cumplir con los elementos para un despido fulminante.**

**Erró el TPI al resolver que el despido de la querellante no constituyó discrimen religioso, a pesar de determinar que arrojar pimienta mientras vestía de blanco fue un acto de vandalismo, violencia e intimidación, razón de despido admitida por el patrono.**

**Erró el TPI al condenar a la querellante al pago de las costas, a pesar de tratarse de una reclamación laboral presentada por la obrera contra su expatrono.**

Ese mismo día, el College Board presentó ante el foro apelado un *Memorando de Costas*. El Apelado reclamó una suma total de $9,354.26, correspondientes a costas incurridas durante el pleito. Como resultado, el 28 de noviembre de 2023, el TPI le concedió, mediante *Orden*, a la señora Castro Torres un término de diez (10) días para oponerse a la imposición de las costas.

El 29 de noviembre de 2023 dictaminamos una *Resolución* en la cual le concedimos a la señora Castro Torres hasta el 4 de diciembre de 2023 para someter los documentos que entendiera pertinentes. A su vez, le concedimos al College Board hasta el 8 de enero de 2024 para someter su alegato en oposición.

El 4 de diciembre de 2023, la Apelante presentó una *Moción en Cumplimiento de Orden y para Suplementar el Apéndice presentado con la Apelación.*

Por otra parte, el 4 de diciembre de 2023, el Apelado presentó una solicitud de desestimación y solicitó la imposición de sanciones y/u honorarios de abogado a la parte apelante. Sostuvo que, en el recurso de *Apelación*, la señora Castro Torres presentó argumentos frívolos, incorrectos, falsos e inflamatorios, con el propósito de inducir a error a este Tribunal.

Así, el 5 de diciembre de 2023, emitimos una *Resolución* mediante la cual le ordenamos a la Apelante a presentar los

documentos pertinentes en papel, en o antes del 8 de diciembre de 2023, so pena de desestimación. En esa misma fecha, dictaminamos otra *Resolución* y resolvimos *No Ha Lugar* la solicitud de desestimación instada por el College Board.

El 11 de diciembre de 2023, el TPI emitió una *Resolución* en la cual aprobó el memorando de costas presentado por el Apelado.

Posteriormente, el 28 de diciembre de 2023, el Apelado presentó una segunda solicitud de desestimación por falta de jurisdicción. Arguyó que, el recurso no fue perfeccionado dentro de término, ya que el Apéndice no fue presentado conforme dispone la Regla 16 (E) de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 16 (E)(2). Además, sostuvo que, de acuerdo a la *Resolución* del 5 de diciembre de 2023, la señora Castro Torres tenía hasta el 8 de diciembre de 2023 para cumplir con las Reglas 16 (E), 70 y 74 de nuestro Reglamento.

El 8 de enero de 2024, la Apelante presentó su *Oposición a Solicitud de Desestimación*. La señora Castro Torres expresó que el recurso fue presentado dentro de los diez (10) días que establece la Ley 2-1961, *supra*. Por tanto, arguyó que esta Curia adquirió jurisdicción para atender el recurso de epígrafe. Ese mismo día, el College Board presentó su alegato en oposición. Posteriormente, el 6 de mayo de 2024, denegamos la segunda solicitud de desestimación instada por el Apelado.

Luego, el 30 de julio de 2024, las partes presentaron la transcripción estipulada de la prueba oral. Finalmente, el 13 de agosto de 2024, la Apelante presentó su alegato suplementario. Perfeccionado el recurso y con el beneficio de la comparecencia de las partes y la transcripción de la prueba oral, procedemos a resolver.

## II.

### -A-

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende, en gran medida, de la exposición del juzgador de los hechos a la prueba presentada, lo cual incluye, ver el comportamiento del testigo y escuchar su voz, mientras ofrece su testimonio. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* 209 DPR 759, 778 (2022). De ahí que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, salvo que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd.* Cuando la alegación es de pasión, prejuicio o parcialidad, el llamado a los foros apelativos es verificar, primordialmente, si el juzgador de los hechos cumplió con su función de adjudicar de manera imparcial. *Gómez Márquez et al. v. El Oriental Inc.,* 203 DPR 783, 793 (2020). Solo así podremos apoyar sus determinaciones de hechos. *Íd.*

Por otro lado, constituye error manifiesto cuando, de un análisis de la totalidad de la evidencia, el foro apelativo se convence de que se cometió un error, independientemente de que exista evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd.* De manera que, la facultad de los foros apelativos para sustituir el criterio de los tribunales de instancia se limita a aquellos escenarios, en los cuales, de la prueba admitida no surge base suficiente que apoye su determinación. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra. Como se sabe, las diferencias de criterio jurídico no alcanzan dicho estándar. *Íd.*

Ahora bien, cabe destacar que, en ausencia de evidencia oral, el Tribunal de Apelaciones carece de los elementos para descartar la apreciación razonada y fundamentada de la prueba que realizó el

Tribunal de Primera Instancia. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).

Como vemos, nuestro esquema probatorio está revestido de un manto de deferencia hacia las determinaciones de credibilidad que realizan los juzgadores de instancia, con respecto a la prueba testifical presentada ante sí. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 146-147 (2020). Lo anterior, en reconocimiento a la oportunidad que tiene el foro primario de ver y observar a los testigos declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones con el efecto de ir formando gradualmente, en su conciencia, la convicción sobre si dicen o no la verdad. *Íd.*, a las págs. 857-858.

**-B-**

La Ley Núm. 2-1961, también conocida como la "*Ley de Procedimientos Sumario de Reclamaciones Laborales*" ("Ley 2-1961"), 32 LPRA sec. 3118 *et. seq.*, provee un procedimiento sumario para la tramitación y adjudicación de pleitos laborales. La esencia del trámite sumario creado por la Ley Núm. 2-1961, *supra*, es proveer un mecanismo judicial para que se consideren y adjudiquen querellas de obreros o empleados de manera rápida, principalmente en casos de reclamaciones salariales y beneficios. *Bacardí Corporation v. Torres Arroyo*, 202 DPR 1014, 1019 (2019) *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 732. Con su adopción, el legislador pretendió brindarle a los obreros y empleados un mecanismo procesal judicial capaz de lograr la rápida consideración y adjudicación de las querellas que éstos presenten contra sus patronos. *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928 (2008); *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 923 (1996).

La naturaleza de este tipo de reclamación exige celeridad en su tramitación, pues de esta forma se adelanta la política pública de

proteger al obrero y desalentar el despido injustificado. *Izagas Santos v. Family Drug Center*, 182 DPR 463, 480 (2011). Reiteradamente, nuestro más Alto Foro ha expresado que *"[l]a esencia y médula del trámite fijado para casos sobre reclamaciones de salarios consagrado en la Ley Núm. 2... constituye el procesamiento sumario y su rápida disposición. Desprovisto de esta característica, resulta un procedimiento ordinario más..."*. (Citas omitidas). *Rodríguez et al. v. Rivera et al.*, 155 DPR 838, 856 (2001). Es por ello que, la Ley 2-1961, *supra*, introdujo a nuestro ordenamiento jurídico un trámite especial y expedito para atender las querellas relacionadas con disputas laborales presentadas por empleados o empleadas, u obreros u obreras en contra de sus patronos. En estos casos se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido por esta ley. *Díaz Santiago v. Pontificia Universidad Católica de Puerto Rico*, 207 DPR 339, (2021).

En lo aquí pertinente, la Sección 15 de la Ley 2-1961, 32 LPRA sec. 3132, establece que en aquellas reclamaciones laborales presentadas al amparo del procedimiento sumario que dispone el referido estatuto, ***"[t]odas las costas que se devengaren en esta clase de juicios serán satisfechas de oficio"***. (Énfasis suplido).

**-C-**

La Ley Núm. 80 de 30 de mayo de 1976, conocida también como la *Ley de Despido Injustificado*, según enmendada ("Ley 80-1976"), 29 LPRA sec. 185a *et seq.*, fue creada con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo. A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justicieros y consustanciales con los daños causados por un despido

injustificado.    Véase, Exposición de Motivos de la Ley 80-1976, *supra*.; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 424 (2013); *Feliciano Martes v. Sheraton*, 182 DPR 368 (2011).

El Artículo 2 de la Ley 80-1976, 29 LPRA sec. 185b, detalla las circunstancias que constituyen "*justa causa*" para el despido e incluye motivos fundados en la conducta del empleado, así como circunstancias de índole empresarial. Así pues, las causas atribuibles a los empleados que constituyen justa causa para el despido se preceptúan en los incisos (a), (b) y (c) del Artículo 2, y son las siguientes:

> (a) Que el obrero siga un patrón de conducta impropia o desordenada.
>
> (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
>
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas por el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. [...] *Íd.*

No obstante, a pesar de que la Ley 80-1976, *supra*, provee una lista de circunstancias que justifican el despido de un empleado o empleada, la precitada ley no pretende ser un código de conducta limitada a una lista de faltas claramente definidas con sus sanciones correspondientes. *Jusino et als. v. Walgreens*, 155 DPR 560, 573 (2001).  A estos efectos, el patrono tiene la potestad de adoptar reglamentos internos y establecer normas de conducta en el lugar de trabajo que estime necesarias para conseguir el buen funcionamiento de la empresa. *Íd.*  Los empleados estarán sujetos a cumplir con dichos reglamentos y normas, siempre y cuando éstos cumplan con el criterio de razonabilidad. *Íd.* De este modo, para que las violaciones de las normas del empleo constituyan justa causa para el despido, el patrono tiene la obligación de probar la razonabilidad de las normas establecidas, que le suministró copia

escrita de éstas al empleado y que el empleado las violó. *Rivera Águila v. K-Mart de P.R.*, 123 DPR 599, 613-614 (1942). En cambio, no se considerará despido por justa causa aquel que se hace por el mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. *Srio. Del Trabajo v. GP Inds., Inc.,* 153 DPR 223, 241 (2001).

En fin, el principio rector que gobierna el despido por justa causa dispuesto en el Artículo 2 de la Ley 80-1976, *supra,* es aquel que delimita las circunstancias en que éste se produce. Es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono. *Íd.*

### III.

La señora Castro Torres solicita la revisión de la *Sentencia* emitida el 14 de noviembre de 2023. La Apelante aduce que TPI erró al sostener que el despido estuvo justificado, a pesar de no habérsele provisto disciplina progresiva. Asimismo, expresa que el TPI incidió al determinar que el despido no fue motivado por discrimen religioso. Finalmente, cuestiona la imposición de costas a favor de su expatrono, toda vez que la reclamación laboral fue instada al amparo del procedimiento sumario que dispone la Ley 2-1961, *supra.*

Por su parte, el College Board arguye que la señora Castro Torres fue despedida debido a que sus actos constituyeron violencia, vandalismo e intimidación, actos contrarios a sus normas y políticas. Sostiene, además, que la deshonestidad de la Apelante durante la investigación constituyó una conducta inaceptable y frívola. Por tanto, el Apelado aduce que actuó conforme a las disposiciones contenidas en el *Employee Handbook.* Por otro lado, estipula que tiene derecho a las costas concedidas por el foro primario.

Por entender que están intrínsicamente relacionados, los errores primero y segundo serán discutidos de manera conjunta. En síntesis, la Apelante arguye que el foro primario incidió al concluir que medió justa causa para su despido. No le asiste la razón. Veamos.

La señora Castro Torres fue despedida de su empleo en el College Board como Especialista de Artes Gráficas tras un incidente ocurrido el 17 de abril de 2015. El referido incidente fue objeto de una investigación por parte del Apelado. Como parte del proceso investigativo, el College Board logró recuperar videos capturados por las cámaras de seguridad el día del evento. Al analizar los videos, el College Board observó a la señora Castro Torres entrar al lugar de trabajo, en horas de la mañana, y arrojar una sustancia arenosa por los pasillos del lugar y en las puertas de las oficinas de algunos supervisores y gerentes. Como resultado, el 28 de abril de 2015, la Apelante fue citada a una reunión en la cual, al ser cuestionada sobre los actos, negó su participación. En ese momento, el Apelado procedió a terminar su empleo en el College Board, de acuerdo a sus normas y política.

La sección 6.4.2 del *Employee Handbook* del College Board definía el concepto de violencia en el lugar de trabajo de la siguiente manera:

**6.4.2 Workplace Violence Defined**

Workplace violence includes:

a. **Threats of any kind**;
b. Threatening, physically aggressive or violent behavior, such as intimidation of, or attempts to instill fear in, others;
c. Other behavior that suggests a propensity toward violence, which can include belligerent speech, excessive arguing or swearing, sabotage, or threats of property, or a demonstrated pattern of refusal to follow policies and procedures;

> d. **Defacing property or causing physical damage to the facilities** [...][2]

(Énfasis suplido)

Respecto a la disciplina progresiva, la sección 6.4.5 del *Employee Handbook* establecía lo siguiente:

### 6.4.5 Corrective Action and Discipline

> If we determine that workplace violence has occurred, we make take appropriate corrective action and may impose discipline on the offending employee(s). **The appropriate discipline may depend on the particular facts** but may include written or oral warnings, probation, reassignment of responsibilities, suspension or **termination**. [...][3]

(Énfasis suplido)

En otras palabras, conforme disponen las normas del College Board, al determinar que un empleado ha perpetrado actos violentos en el lugar de empleo, el curso disciplinario dependerá de los actos particulares, el cual podrá comprender la terminación de su empleo, sin que sea necesaria la disciplina progresiva. La Apelante recibió copia del *Employee Handbook* y, como resultado, conocía o debía conocer el tipo de conducta que constituía violencia en el empleo. A su vez, debía conocer que incurrir en tal conducta sería justa causa para su despido.

Ahora bien, como normativa, los foros apelativos debemos deferencia a las determinaciones alcanzadas por los foros primarios, puesto que fue ante estos que testificaron las personas bajo juramento, ocasión que los puso en posición de auscultar gestos, expresiones, oír cambios de tonos, y ejercer la delicada función de adjudicar veracidad. A menos que se demuestre que el foro primario actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto, no estamos en posición de intervenir con la apreciación de la prueba.

---

[2] Véase, SUMAC, Entrada 52, Anejo 5, a la pág. 59 (*Employee Handbook*).
[3] *Íd*, a la pág. 60.

En el caso ante nuestra consideración, el foro apelado realizó la siguiente determinación sobre la causa del despido de la señora Castro Torres:

> 105. Luego de la investigación y de la oportunidad brindada a la Sra. Castro para que dijera la verdad y proveyera una explicación, al ésta mentir reiteradamente y ver que la Sra. Castro no estaba dispuesta a cooperar en la investigación efectuada, no había acción correctiva que se pudiese llevar a cabo. Lo anterior, junto con la severidad de los hechos, no le quedó otro remedio que despedirla.[4]

Como tribunal apelativo no debemos descartar y sustituir las conclusiones de hecho bien ponderadas del foro de instancia ni la adjudicación de credibilidad que hizo el juzgador de los hechos. Aquilatada la prueba documental, así como la transcripción de la prueba oral, no encontramos razón para intervenir con la apreciación de la prueba realizada por el TPI. Somos del criterio que los errores primero y segundo no fueron cometidos por el foro de instancia.

Por otro lado, la Apelante aduce que el foro apelado incidió al imponerle el pago de costas, toda vez que la reclamación laboral fue presentada al amparo de la Ley 2-1961, *supra*. Le asiste la razón. Veamos.

La Sección 15 de la Ley 2-1961, *supra*, expresamente estipula que "*[t]odas las costas que se devengaren en esta clase de juicios serán satisfechas de oficio*". Tal disposición es cónsona con el propósito del precitado estatuto de proveer "*un procedimiento sumario de reclamaciones laborales para la rápida consideración y adjudicación de las querellas de obreros y empleados contra sus patronos relacionadas a salarios, beneficios y derechos laborales.*" *Vizcarrondo Morales v. MVM, Inc.*, *supra*. Así, pues, el TPI estaba impedido de imponerle a la señora Castro Torres el pago de las costas devengadas por su expatrono, el College Board.

---

[4] Véase, Apéndice de la Parte Apelante a la pág. 31 (*Sentencia*).

**IV.**

Por los fundamentos que anteceden, se modifica la *Sentencia* apelada, a los únicos efectos de eliminar la imposición de costas a favor del patrono, y así modificada, se *Confirma.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones